DAVID P. EGNER, APPELLEE, V. CURTIS, TOWLE & PAINE COMPANY, APPELLANT.

FILED APRIL 17, 1914. No. 17,540.

1. Trial: JURY: VOIR DIRE EXAMINATION. Where a defendant, in a personal injury action, is indemnified by an employers' casualty insurance company, it is proper for plaintiff's counsel to show such fact when impaneling the jury, and to inquire of each juror upon his *voir dire* if he is a stockholder or agent, or in any manner interested in such company.

2. Evidence: ACTION FOR PERSONAL INJURIES: ADMISSIONS. In an action for personal injuries, plaintiff, to prove an admission of liability, may show a demand made on defendant for payment for his injuries, and that defendant, through its general manager or duly authorized agent, made such admission.

3. ———: ———: ———. And in such a case, if such general manager or duly authorized agent puts a refusal of defendant to pay solely on the ground that it is insured and for that reason it cannot pay, plaintiff is entitled to have the conversation admitted and the

evidence submitted to the jury, under suitable instructions, for them
to determine what the true import of the conversation was.

4. **Trial: WITNESSES: EXAMINATION.** It appears that after plaintiff
was injured a physician, unknown to, and without authority from,
him, was called to treat his injuries, and without any subsequent
employment by plaintiff continued to treat him for a considerable
period of time. Upon the trial plaintiff's counsel called such phy-
sician to the witness-stand, and attempted to show by him who employed
him. *Held*, not misconduct on the part of counsel.

5. ———: ARGUMENT OF COUNSEL. Ordinarily, in a civil action, state-
ments made by plaintiff's counsel in his closing argument will not
justify a reversal of the judgment, where it appears that exception
was taken to the statement at the time it was made, the exception
sustained, and the jury duly admonished by the court.

6. **Appeal: HARMLESS ERROR.** The fact that plaintiff, in a personal
injury suit, is permitted, over objections, to show that he has a
family consisting of a wife and four children will not be held to be
prejudicial error, where it does not appear that the admission of such
testimony could have influenced the jury in arriving at the amount
of their verdict.

7. **Instructions Approved.** The action of the court in refusing certain
instructions requested by defendant, and in giving the instructions
given by the court on its own motion, examined and approved.

8. **Appeal: CONFLICTING EVIDENCE.** The verdict of a jury, rendered
upon conflicting evidence and sustained by the trial court, will not,
ordinarily, be disturbed on appeal.

APPEAL from the district court for Lancaster county:
LINCOLN FROST, JUDGE. *Affirmed.*

*Morning & Ledwith,* for appellant.

*George W. Berge,* contra.

FAWCETT, J.

From a judgment of the district court for Lancaster
county, on a verdict for $3,000 in favor of plaintiff in an
action for personal injuries, defendant appeals.

Defendant is a corporation, and, among other things, is
engaged in running a planing mill. In connection with
its business it owns a four-story building and has in use
therein a freight elevator. The petition alleges: That the
defendant, through its foreman, ordered plaintiff, who was

one of its employees, to leave his work in another part of the building and help the foreman break a hole in the pit of the elevator shaft, for the purpose of permitting accumulated water to run into an adjacent sewer; that there was about a foot of water in the pit; that as soon as they entered the pit the foreman directed plaintiff to reach down into the corner and into the water where the foreman had been digging a hole during the forenoon, for the purpose of removing a stone or obstruction in the pit, so as to let the water flow out; that plaintiff, in stepping down to reach the stone, and on account of the water in the pit, was obliged to and did place his right hand against the wall of the elevator shaft in order to support himself, and while so stooping down and endeavoring to reach the stone with his left hand, and while in the exercise of due care and caution, and without any fault or negligence on his part, the elevator was suddenly moved upward, throwing the counterweights, suspended by ropes attached to the elevator, and weighing approximately 2,500 pounds, onto the right hand of plaintiff, thereby completely crushing and breaking the bones of his right wrist and arm and completely and permanently destroying his right hand. Numerous grounds of negligence on account of what had happened are alleged in the petition, among them negligence of the defendant in directing plaintiff "to go into said elevator basement, without notifying him that said elevator was not fastened or chained, as was the custom when working about said elevator, and because of the negligence of the defendant in not fastening or chaining said elevator while plaintiff was directed to work under the same." The trial court withdrew from the consideration of the jury all of the acts of negligence charged in the petition except these two. The answer admits the corporate character of defendant, the business in which it was engaged, and that plaintiff was in its employ at the time he received the injury set out in the petition; alleges that he had been so employed for several weeks; that the labor in which he was engaged at the time he received the injury was within the scope and terms of his employment; denies

in detail all the acts of negligence alleged in the petition; and alleges contributory negligence. The reply is a general denial.

The assignments of error argued in defendant's brief will be considered in the order in which they are therein presented.

Misconduct of plaintiff and his attorney. When the jury were being impaneled, counsel for plaintiff, in examining the first juror, asked: "Mr. Fox, are you acquainted with the American Fidelity Company, or Williams & Walt, its agents?" An objection was made to this question on the ground that neither the Fidelity Company nor Williams & Walt are "parties to this suit, or connected therewith." The objection was sustained, and no further question of that kind was asked by counsel for plaintiff in his *voir dire* examination of the jury. Defendant argues that, notwithstanding the fact that the objection was sustained, to ask the question and make it necessary for defendant to object was misconduct, entitling defendant to a new trial. We are unable to give our assent to this contention for two reasons: First, in our judgment, it could not have prejudiced the defendant with the jury; second, the error of the court was in not overruling the objection, as it should have done. Upon this point we concede that the authorities, cited from other states, are conflicting; but we think the correct rule is the one announced in *Foley v. Cudahy Packing Co.*, 119 Ia. 246; *Brusseau v. Lower Brick Co.*, 133 Ia. 245; *Spoonick v. Backus-Brooks Co.*, 89 Minn. 354; *Antletz v. Smith*, 97 Minn. 217; *Citizens Light, Heat & Power Co. v. Lee*, 62 So. (Ala.) 199; *Swift v. Platte*, 68 Kan. (on rehearing) 10; *Iroquois Furnace Co. v. McCrea*, 191 Ill. 340. In *Spoonick v. Bachus-Brooks Co., supra,* it is said (p. 359): "It is no answer to this to say that the insurance company is not named as a party to this action, for the bias of the juror is not to be determined by this fact. Nor is it an answer to say that counsel may protect his client by using a peremptory challenge. It is his right first to learn the facts, and he must do so to exercise intelligently his right to

challenge peremptorily. The authorities all go to show that a very insignificant interest in the result of an action, and frequently a very trifling relationship to one of the parties, is sufficient to disqualify a person from sitting as a juror. In order to secure to litigants unbiased and unprejudiced jurors, we are compelled to hold that plaintiff's counsel had a right to ascertain whether there was such a relationship between the persons called as jurors and the insurance company, a corporation vitally interested in the result, which would disqualify these persons, because, by implication, they would be biased and prejudiced."

It is further argued under this assignment that plaintiff's counsel, "under the pretext of trying to get his client to testify to a statement made by Mr. Towle, general manager and treasurer of the defendant, as to defendant's liability, sought through several pages of record, over repeated objections, to draw into the case an alleged statement of Mr. Towle that the defendant carried insurance against liability for such accidents, and he succeeded in doing so." We do not think the record sustains the aspersions thus cast upon counsel. We think it shows, as stated by counsel in his brief, that he was earnestly endeavoring to show by his client, who had a very imperfect understanding of English, a conversation had with Mr. Towle after plaintiff was able to leave the hospital, in which Mr. Towle, the general manager, admitted the liability of his company, but gave as a reason for not paying plaintiff his damage that defendant's employees were all insured, and for that reason defendant could not pay. The court ruled so constantly with the defendant throughout the examination of plaintiff by his counsel that about all counsel for plaintiff obtained was an answer to the question, "What did Mr. Towle say about the liability of the Curtis, Towle & Paine Company for that injury? A. He told me the people is all insured and so it is not right to pay me." This answer was on motion stricken out. Thereupon counsel for plaintiff stated: "Q. Mr. Egner, we will try it again. Let the reporter read the question."

The question was read, and after persistent objections the witness answered: "A.   Well, he gave an address and sent me over on the office, I guess Williams & Walt." This answer was stricken out.  The court then put the question to the witness: "Mr. Egner, in making your answer, confine your answer to what Mr. Towle said about the Curtis, Towle & Paine Company.   A.   That is all what was said; he sent me over to the insurance company, and they helped me out in the suing."   On motion of defendant all of this answer was stricken out except the words, "That is all what was said."   Here, again, we think the court erred against the plaintiff.   Plaintiff, in attempting to prove an admission of liability, had a right to show a demand made on defendant for payment for his injuries, and what defendant's general manager said in answer thereto. If the general manager put the refusal of defendant to pay solely on the ground that it was insured, and for that reason defendant could not pay, plaintiff had a right to show that fact, and have it go to the jury, and leave it for them to say whether the true import of the conversation was an admission of liability on the part of defendant.

*Anderson v. Duckworth,* 162 Mass. 251, holds: "In an action for personal injuries occasioned to the plaintiff while in the defendant's employ, it is competent for the judge, in the exercise of his discretion, to admit in evidence the whole of a conversation offered by the plaintiff for the purpose of showing an admission of liability on the part of the defendant, and in which reference was made by him to the fact that he was insured against accidents, with a caution to the jury that the fact of insurance is not to be taken as an admission by the defendant, and then in the charge, after saying again that the insurance is not to be regarded as an admission, to leave it to the jury to find, under suitable instructions, what the true import of the conversation was."

It is next urged that counsel for plaintiff was guilty of misconduct in the examination of Doctor Hummel, called as a witness for plaintiff.   The record shows that after the injury Doctor Hummel was called to see plaintiff at his

(the doctor's) office, where he found him when he "came down." The doctor testified that he did not know who it was that called him; that it was not Mr. Egner; that he was not the physician of the Curtis, Towle & Paine Company. He was then asked: "Q. What company are you a physician for?" An objection to this question was sustained. He then testified that Mr. Egner had never paid him for his services, nor had the defendant. He was then asked: "Q. You are not looking for any pay from Mr. Egner, are you? A. Well, I am looking for pay from Mr. Egner. I see no reason why he should not pay. He is able. I presented the bill to him. Q. He never employed you, did he?" The record, as set out in defendant's brief, shows that an objection to this question was sustained, yet it gives the answer: "A. I don't hardly know how to answer that, your honor. As I answered before, I was called to attend him, and I kept on treating him until he quit coming. Q. Where were you called to attend him; what was the reason for it?" Objection sustained. "Q. Of course, you expect pay from some source for your work on Mr. Egner, don't you?" Objection sustained. "Q. You have already received it, haven't you? A. Pay for treating Mr. Egner? Q. Of some sort? A. No, sir; not a penny." We are unable to discover how this examination of the doctor could have prejudiced the defendant. It is too apparent for serious discussion that Doctor Hummel is the physician of the insurance company. He was the one called to treat plaintiff after his injuries, and treated him for a considerable time. Plaintiff was practically driven to calling Doctor Hummel to the stand in order to properly prove his injuries. If, as a matter of fact, Doctor Hummel was the physician of the insurance company, and by reason of that fact was called to treat plaintiff after his injury, plaintiff had a right to show the fact as a circumstance tending to show that defendant recognized a liability. In cases of this character, an insurance company that has contracted to indemnify a master for injuries to his servants, but which refuses to pay for those injuries until liability has been fastened upon its client,

Egner v. Curtis, Towle & Paine Co.

should in all fairness come forward and openly defend the action. If the defendant was not itself resisting plaintiff's demand, plaintiff had a right to show that fact. If some insurance company was defending it under the cover of defendant's name, it was proper to uncover it. We know of no rule of justice which permits an employers' liability company to resist a claim, for which it has contracted to assume liability, under the name of another, while denying that privilege to other corporations or private individuals.

It is further argued under this assignment that counsel for plaintiff in his closing argument stated to the jury, in substance, that the defendant had not taken much interest in the case, and that, in fact, it wanted the plaintiff to get a big verdict against it. Exception was taken to this statement, and the jury were instructed not to consider the remark. In its ruling the court went to the limit in sustaining defendant's objections, and after the trial was over it evidently did not consider that what had transpired could have prejudiced the defendant with the jury, or it would have granted a new trial. The trial court, who saw and heard what transpired, was not able to discover any prejudice, and we are not able to discern any.

The next assignment is that the court erred in permitting plaintiff to testify, over defendant's objection, that he had a wife and children. This point is covered by two questions and answers: "Q. You got a family? A. Yes, sir. Q. A wife and children? A. Yes, sir; wife and four children—four girls." Counsel for plaintiff admits that, while it would have been proper to have excluded this evidence, it was not error to admit it. Conceding that, strictly speaking, it was error to admit it, it affords no ground for reversal. When we consider the serious injury which plaintiff had received, that he was but 37 years of age, and the amount of the verdict returned by the jury, it is very apparent that no extra allowance was made on account of plaintiff's wife or children.

It is next urged that the court erred in refusing to give instructions 2, 3, 4, 5, 6, 7, 10 and 12, requested by de-

fendant. We deem it unnecessary to set out these instructions, or to comment upon them, for the reason that everything contained in them which defendant was entitled to have submitted to the jury fairly appears in the instructions given by the court.

The next objection is that the court erred in giving instructions 5, 7 and 11. These instructions are all three so clearly in line with the rule in cases of this character, repeatedly sustained by this court, that we shall not take the time to consider them. They were properly given.

The last assignment is that the verdict is contrary to the evidence. The court in its instructions withdrew from the jury all of plaintiff's allegations of negligence except: "(a) The allegation of plaintiff that the defendant was negligent in directing the plaintiff to go into said elevator pit and do the work that he was there directed to do, without notifying the plaintiff that the elevator was unfastened; and (b) the further allegation that the defendant was negligent in inviting the plaintiff into said elevator pit for the purpose of doing what the evidence discloses he was directed to do, without fastening the elevator." The evidence is uncontradicted that the elevator was not fastened. The court would therefore have been warranted in instructing the jury that that allegation had been established. The evidence that plaintiff was sent into the pit, without notifying him that the elevator was not fastened, is conflicting, but it is sufficient to sustain the verdict of the jury.

Finding no prejudicial error in the record, the judgment of the district court is

AFFIRMED.

LETTON, J. Being unable to assent to a number of statements made in the opinion which I deem not essential to the disposition of the case, I concur in the conclusion only.