## EPPINGER & RUSSELL CO. v. SHEELY.

Circuit Court of Appeals, Fifth Circuit.
February 23, 1928.

No. 5074.

**1. Jury ⬤131(5)—Party may, in good faith, inquire whether prospective juror is interested in result because of business relations with adversary.**

Party litigant has right to inquire in good faith whether prospective juror is interested in result of suit by reason of business relations with adversary party, in order that he may exercise intelligently his privilege of peremptory challenge, or disclose such interest as would afford ground of challenge for cause.

**2. Trial ⬤108½—Injured employee's attorney could ask whether any veniremen were in casualty insurance business, and whether firm of one replying in affirmative was handling such insurance for employer.**

In action against employer for injuries to employee, plaintiff's attorney had right to ask veniremen whether any of them were engaged in casualty insurance business, and to ask one replying in affirmative whether his firm was handling casualty insurance for defendant.

**3. Evidence ⬤558(7)—Injured employee's attorney held properly permitted to ask defendant's physician whether he was retained by employer's surety.**

In action against employer for injuries to employee, it was proper for plaintiff's attorney to propound in good faith to defendant's physician question whether he was retained by any company that was surety for defendant against liability for injuries to employees, such inquiry being aimed at revealing witness' interest.

**4. Appeal and error ⬤1058(2)—Any error in excluding physician's testimony as to possible causes of cirrhosis of liver held cured by his subsequent testimony.**

In action for injuries to employee, falling into waste creosote pit, any error in refusing to require plaintiff's physician to testify whether cirrhosis of liver could have been produced by another cause than creosote poisoning was cured, when witness in effect gave answer sought on further examination.

**5. Witnesses ⬤268(1) — Cross-examination should not be unduly limited, nor extended beyond reasonable bounds or to irrelevant matters.**

While right of cross-examination should not be unduly limited, it should not be extended beyond bounds of reason, or to matters not relevant to issues involved.

**6. Witnesses ⬤267—Extent of cross-examination is largely within trial court's discretion.**

Much must be left to discretion of trial court in determining extent of cross-examination.

24 F.(2d)—10½

**7. Appeal and error ⬤1056(1)—Exclusion of physician's testimony as to number of lobes in liver held not reversible error, in view of his detailed description of its structure and functions.**

In action for injuries to employee, suffering from cirrhosis of liver, alleged to have been caused by falling into waste creosote pit, exclusion of testimony of defendant's physician as to number of lobes in liver *held* not reversible error, in view of his detailed description of structure and functions of liver.

**8. Master and servant ⬤264(10)—Variance between allegations that plank was unsound and evidence that it broke under combined weight of two employees held immaterial and not misleading.**

Variance, if any, between declaration alleging that plank over waste creosote pit, into which plaintiff fell, was unsound, and that no other way was provided for going over pit to raise drain pipe, and evidence that plank broke when subjected to his and fellow employee's combined weight, *held* immaterial, and not misleading; cause of accident being well known to defendant employer.

**9. Master and servant ⬤286(2)—Whether plank was intended to be used at time of injury to employee when it broke and safer method was available held for jury on conflicting evidence.**

Whether plank over waste creosote pit, into which employee fell when plank broke, was intended to be used at time of accident, and whether a safer method of raising drain pipe was available, *held* for jury on conflicting evidence.

**10. Master and servant ⬤235(7)—Employee, directed by employer to use plank over waste creosote pit whenever necessary to raise drain pipe, held not bound to inspect plank.**

Employee, directed by employer to use plank furnished by latter whenever necessary to raise drain pipe in waste creosote pit, into which he fell when plank broke, was not bound to inspect plank.

**11. Master and servant ⬤285(1)—Whether creosote poisoning caused employee's cirrhosis of liver held for jury on conflicting expert testimony.**

Whether creosote poisoning, resulting from employee's fall into waste creosote pit, caused him to develop cirrhosis of the liver, *held* for jury on conflicting testimony of employee's and employer's physicians.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call and William B. Sheppard, Judges.

Action by J. H. Sheely against the Eppinger & Russell Company. Judgment for plaintiff, and defendant appeals, pending which Mamie C. Sheely, administratrix of plaintiff's estate, was substituted as appellee on his death. Affirmed.

J. T. G. Crawford and Philip S. May, both of Jacksonville, Fla., for appellant.

Evan T. Evans, of Jacksonville, Fla., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. J. H. Sheely recovered judgment for personal injuries sustained by falling into a waste pit while he was employed by appellant as night engineer in its plant for creosoting lumber. He died pending this appeal, and his administratrix has been substituted as appellee.

The negligence alleged was the failure "to provide a safe and sound plank or other means for the plaintiff to go out over said waste pit and perform his duty" of raising a certain drain pipe, which by becoming stopped up had ceased to drain waste out of the pit. In qualifying the jury, plaintiff's attorney asked the veniremen whether any of them were engaged in the casualty insurance business. One replied in the affirmative, and he was then asked whether his firm was handling casualty insurance for appellant. He stated that he thought not, but was not certain. During the trial a physician, who testified for appellant, was permitted on cross-examination to say that he was not regularly retained by any company that was surety for appellant. Whether or not appellant carried any casualty insurance was not disclosed by the evidence. There was a waste pit about 8 feet in width, and 10 or 12 feet in length and depth. It contained a mixture of water, waste creosote, and wood saps. That mixture could be siphoned out through a drain pipe, which was attached by a chain to a 2x10-inch plank across the top of the pit. There was testimony to the effect that the plank was unsound. The drain pipe was stopped up by the flooding of the tide, and it was necessary to raise it in order to put it into condition. Sheely testified that he had been instructed by appellant to raise the pipe, in case of necessity, by going out on the plank and pulling it up by the chain, and that there was no other way provided at that time by which it could be raised; that he made an attempt to raise the pipe by himself, but was unable to do so, and called the fireman to his assistance; that, when the two of them pulled up on the chain, the plank broke, and both fell into the pit, which was over their heads in depth, and so thick that they could not swim in it. The fireman was drowned, and Sheely suffered from burns, and claimed that he swallowed some of the creosote mixture. There was evidence for appellant to the effect that the pipe could have been raised without any risk by means of a rope that was tied around it and extended through a window into the engine room.

Physicians were called by each side. They all agreed that creosote was poisonous, but disagreed as to whether that in the pit was of sufficient strength to cause cirrhosis of the liver, which was the disease Sheely was found to be suffering from about four months after the accident. A physician, who testified for plaintiff, stated in answer to an hypothetical question that in his opinion creosote poisoning caused Sheely to have cirrhosis of the liver. He was not permitted to answer on cross-examination whether it were possible that some other cause existed, but in other parts of his testimony he admitted that cirrhosis of the liver did not usually develop within a few months, and stated that disease might result from any one of several causes. Appellant's attorneys were overruled in their attempt to extend their cross-examination of that witness for the mere purpose of showing his opinion as an expert was of little or no value. Appellant introduced a physician who fully described the functions of the liver, and in answer to an hypothetical question stated that in his opinion creosote poisoning was not the cause of Sheely's condition of health, and could not have been, because that condition would not have developed within so short a period after the accident. That witness was then asked to state the number of lobes the liver has; but an objection to that question was sustained.

The assignments of error complain of the court's rulings during the course of the trial above set out, and of the denial of appellant's motion for a directed verdict in its favor.

[1, 2] A party litigant has the right to inquire in good faith whether a prospective juror is interested in the result of the suit by reason of business relations with the adversary party, in order that he may exercise intelligently his privilege of peremptory challenge, or disclose such interest as would afford ground of challenge for cause. It is not usually known to an employee, especially of a large business concern that has many employees, whether his employer is protected against liability for negligence by casualty insurance, and in many cases the truth can only become known by making inquiry on the voir dire. If a surety be in fact the real party interested in defending the action, it hardly would be contended that one who is

interested in such surety, as its agent or because of other business connections, would be an impartial juror. If in the particular case there is no surety upon which the burden of liability would fall, it is easy enough for the defendant, who alone has actual knowledge of that fact, to prove it, and thereby avoid any possible injury or prejudice. It is not contended here that the inquiry was made in bad faith, or merely for the purpose of creating prejudice.

[3] We are of opinion, also, and for the same reasons, that it was proper to propound in good faith, to one of appellant's physicians, the question whether he was retained by any company that was surety for appellant against liability for negligence to employees. At last the inquiry is aimed at revealing the interest of the juror or witness. Upon principle and by weight of authority, as we think, the inquiry into the interest of the venireman and physician was admissible. Egner v. Curtis Co., 96 Neb. 18, 146 N. W. 1032, and note to that case in L. R. A. 1915A, 153, 156.

[4-6] Any error that might have been committed in refusing to require Sheely's physician to testify whether it were possible that cirrhosis of the liver could have been produced by some cause other than creosote poisoning was cured when, upon further examination, that witness in effect gave the answer sought to be obtained in the first instance. On the one hand, the right of cross-examination should not be unduly limited; but, on the other, it should not be extended beyond the bounds of reason, or to matters that are not relevant to the issues involved in the case. Much must be left to the discretion of the trial court, and we are unable to say that in this case the court abused its discretion.

[7] Appellant had the benefit of an admission from Sheely's physician that it was most unusual for cirrhosis of the liver to be developed within the short period that elapsed between the accident and the advanced stages of the disease. Proof of the number of lobes in the liver by the testimony of appellant's physician would not have added any probative force to his detailed description of the structure and functions of the liver. There was no dispute but that the condition of the liver caused Sheely's serious illness and death.

[8-11] In support of the motion for a directed verdict, it is argued that there was a variance, in that the declaration alleges a failure to furnish a plank sufficient to support Sheely's weight, whereas the proof shows that the plank did not give way under his weight, but broke only when it was subjected to his and the fireman's combined weight; that liability was not shown, because the plank was not in use at the time of the accident, and it was Sheely's duty to examine it before using it; that Sheely was guilty of contributory negligence in adopting an unsafe method to raise the pipe, when there was available the safe method of raising it by means of a rope; and that the condition of Sheely's health was not the result of his falling into the waste pit, but was attributable to other causes.

In our opinion there was no material variance. The declaration alleges, not that the plank was insufficient to support Sheely's weight, but that it was unsound, and that no other way was provided by which he could go out over the waste pit and raise the pipe. The variance, if any, was immaterial, and did not mislead appellant, as the cause of the accident was well known to it. Whether the plank was intended to be used at the time of the accident, and whether there was available a safer method, were questions about which the evidence was in direct conflict. Those questions were for the jury to settle. Sheely was not bound to inspect the plank, if, as he testified, his employer furnished it, and directed him to use it whenever it should become necessary to raise the pipe. We are unable to say as a matter of law that the evidence was insufficient to support the inference that creosote poisoning caused Sheely to develop cirrhosis of the liver. While it is true that the physicians who testified for appellant gave it as their opinion that that disease usually developed slowly, yet they did not undertake to fix with any degree of certainty the period of time within which it could reach the acute stage in cases of poisoning.

Reversible error is not shown by any of the assignments, and the judgment is affirmed.