IN THE

# SUPREME COURT OF NEBRASKA.

## SEPTEMBER TERM, A. D. 1889.

PRESENT:

Hon. M. B. REESE, Chief Justice.
" AMASA COBB, } Judges.
" SAMUEL MAXWELL, }

---

## N. D. BLACKWELL ET AL. V. GEORGE D. WRIGHT.

[Filed September 17, 1889.]

1. **Usury:** EVIDENCE. Plaintiffs, who were in possession of a promissory note, and chattel mortgage given to secure it, instituted an action in replevin against the mortgagor for the possession of the mortgaged property. The defense presented was that the note was tainted with the vice of usury, of which the plaintiff had knowledge at the time of the alleged purchase; that the purchase was colorable only and not *bona fide,* and that sufficient payments had been made on the original indebtedness to cancel it. Defendant called a member of plaintiff firm to the witness stand and over the objection of the plaintiff interrogated him as to his knowledge of the business methods of the payee of the note, and showed by him that he was somewhat familiar with the transactions of the payee's bank—a member of which was the brother of the witness—and that usurious interest was usually charged by such payee. It was *held,* that although not conclusive against plaintiff, yet the evidence was

competent as a circumstance to be considered by the jury in connection with other proven or admitted facts as tending to establish notice of defense.

2. **Impeaching Party's Own Witness.** While a party who calls a witness as his own may not discredit his testimony by impeaching him, yet this rule does not prevent such party from proving the truth by other witnesses even though the witness first called may be contradicted thereby.

3. **Usury:** ONUS PROBANDI : VERDICT. Usury being shown in the original transaction, and the burden of proof being upon plaintiffs to show the good faith of the transfer of the promissory note to them before maturity, the verdict in favor of defendant is sustained, as not being against the evidence.

ERROR to the district court for Hamilton county. Tried below before NORVAL, J.

*L. G. Hurd,* and *Robert Ryan,* for plaintiff in error :

The testimony offered by defendant contradicting their own witness Updike was inapplicable except for impeachment, and inadmissible. (*Hooper v. Browning,* 19 Neb., 427-8 ; *Strader v. White,* 2 Id., 359, 360 ; 1 Green Ev. (10th Ed.), sec. 442.) Defendant seeks to enforce the penalty in the case of notes made more than a year before cause of action accrued, and is barred by sec. 13 of the Code. No money damages should be awarded, as the judgment was for the value of the property. (*Romburg v. Hughes,* 18 Neb., 579 ; 26 N. W. Rep., 351.) The judgment was not for a fixed sum, and therefore improper.

*Agee & Stevenson,* and *Hainer & Kellogg,* for defendant in error :

The burden of proof was on plaintiffs to show that they were *bona fide* holders, which they failed to do. The testimony contradicting Updike was offered not to impeach but to establish material facts. The objection made to it at the time was a different one and was too general. (*Wilhelm v. Russell,* 8 Neb., 120 ; *Gregory v. Langdon,* 11 Id.,

166 ; *Ry. Co. v. Walker*, 15 N. E. Rep., 234 ; 113 Ind., 196 ; *Steele v. Ry. Co.*, 74 Cal., 323.) But it was admissible even if impeaching. (*Wallack v. Wylie*, 28 Kas., 138 ;. *Johnson v. Leggett*, Id., 590.) Defendant seeks not to enforce a forfeiture or a penalty, but to exercise his right of defense. The judgment is alternative in form and comes within provisions of sec. 596 of Code.

REESE, CH. J.

This was an action in replevin instituted in the district court of Hamilton county by the assignee of the mortgagee for the possession of certain personal property mortgaged by defendant in error to Updike & Titus for the purpose of securing the payment of a promissory note made by defendant to them, which note, it is claimed by plaintiff, was endorsed to them by the payee before maturity, in the due course of trade and for value. The defense presented was that the note was tainted with the vice of usury ; that it was a renewal of a number of preceding notes, upon which interest had been paid, more than sufficient to cancel the original indebtedness; with a denial of plaintiffs' claim that they were good-faith purchasers before maturity.

A jury trial was had which resulted in a verdict in favor of defendant, finding the value of the property in dispute to be $408, and assessing his damages at $5. A motion for a new trial was filed, based upon the following grounds :

" (1.) The verdict is not sustained by sufficient evidence.

"(2.) Errors of law occurring at the trial and duly excepted to.

" (3,) The verdict is contrary to law."

Before a ruling upon the motion for a new trial was made, the defendant remitted $4.99 from the verdict for damages, when the motion was overruled and judgment was rendered for a return of the property and one cent damages, or if a return could not be had, for $408, the value of the property.

From this judgment the cause is brought to this court by plaintiff by proceedings in error.

Upon the trial plaintiff placed George W. Updike, a member of the firm of M. D. Blackwell & Co., plaintiffs, who are bankers in Harvard, upon the witness stand for the purpose of identifying the note and mortgage, and proving ownership thereof, and demand of defendant for the possession of the property in dispute; and after the introduction of the note and mortgage, plaintiff rested his case. Defendant thereupon recalled the same witness for the purpose of proving the circumstances under which the note was purchased, by which, doubtless, he desired to throw suspicion upon the transaction, and show thereby that the transfer was colorable only, and with intent to deprive defendant of any defense he might have to the note in the hands of the payees, Updike & Titus, which was also a banking firm doing business in Harvard, and which consisted of Edmund Updike and I. J. Titus. The testimony of this witness, while given with apparent candor, was not such as would fully establish the fact sought to be shown by defendant. In this connection defendant was permitted to interrogate him as to his knowledge of the methods of Updike & Titus in their business transactions and the rate of interest charged by them; Updike, of the firm of Updike & Titus, being a brother of the witness. It was shown that the rate of interest usually charged was more than the legal rate, of which the witness had knowledge. This was doubtless for the purpose of impeaching the *bona fides* of the purchase. While the fact alone that the purchaser of the note knew that the vendor and payee was loaning money at an usurious rate, might not of itself be sufficient to charge the purchaser with notice of the defense of usury, yet it would be competent as a circumstance to be considered in connection with other proven or admitted facts as tending in that direction; and the court did not err in overruling plaintiff's objection to the question asked.

The note and mortgage were offered and received in evidence, and are referred to in the bill of exceptions as exhibits "A" and "B," but are not attached thereto, nor is a copy of either to be found therein. We are unable, therefore, to say just when the note matured. George W. Updike, when called by plaintiff, testified that the purchase was made between the 20th and 30th of July, 1886. He also testified to the same thing in substance when called as a witness by defendant. We may assume, perhaps, that upon its face the note matured the first day of the following September, but of this there is no proof in the record. After George W. Updike had thus testified, defendant called other witnesses for the purpose of proving that on the 30th day of July he had offered to sell the note at a heavy discount, and that he had not seen defendant, nor learned of his proposed defense, until about the 6th of August. The objection to this evidence is that it was offered for the purpose of impeaching the defendant's own witness, George W. Updike, and therefore it was incompetent. While we fully recognize the principle of law contended for by plaintiff in error, that a person may not impeach the character of his own witness, and that having called him was equivalent to a recommendation that he was entitled to belief, which could not be contradicted, yet we do not apprehend that the testimony offered by defendant would fall under this rule. The rule will not prevent a person from proving the fact to be different from that which is stated by his own witness. The witness may be mistaken, may be misinformed, or he may have misled the party calling him. In either event, the party so calling him would not be prevented from showing the exact facts as they occurred, and this is not considered an impeachment of his witness.

It is contended that these facts, if true, have no significance whatever, and were improperly admitted in evidence. While it is no doubt true that there is nothing very con-

vincing in the evidence introduced, yet it was competent as a circumstance tending to show the want of good faith in the purchase of the note.   If, immediately after the alleged purchase, and before plaintiff in error had an opportunity to see defendant, or had any knowledge as to what his purpose was, they went upon the market and sought to sell the note at a heavy discount, it would be competent to show that fact as tending to throw some light upon their alleged *bona fides*.   While it is true that the evidence was not of as high a quality perhaps as might be desired, yet it would have some tendency to throw light upon the conduct of the parties, and for that purpose would be competent for the consideration of the jury, and to be given such weight, and only such, as they might deem it entitled to.

It was contended and urged by defendant in error on the trial that the note referred to was a final renewal of a long series of notes, which had been executed to the bank of Updike & Titus, and while upon the witness stand he exhibited what he claimed to be the notes which had formerly been executed to that bank, and of which the note in question was a renewal.   These ran from exhibit " C" to exhibit " Z," and showed a large increase over the original note, notwithstanding endorsements aggregating a large amount upon the notes referred to.   They were presented by him and identified and introduced in evidence. Not having the note involved in this suit, nor a copy of it, before us, and having no proof as to the amount for which it calls, we, of course, cannot enter upon an examination of this question.   The various notes were payable to Updike & Titus, and it was for the jury to say, after hearing all the evidence, whether or not the note in question was a renewal of the indebtedness represented by them in the order of their dates.

It is insisted that as section 13 of the Civil Code permits an action to be instituted upon a statute for a penalty or forfeiture only within one year from the time

the cause of action accrued, the court erred in permitting defendant to show the alleged payments upon a claim to Updike & Titus, more than one year prior to the commencement of the action. This was not an attempt on the part of defendant to enforce a statute penalty, nor a forfeiture, but was for the purpose of showing that the indebtedness, which was the basis of plaintiffs' action, had been paid, and that therefore they were not entitled to the possession of the property described in the mortgage. Had the action been instituted by Updike & Titus, there can be no doubt but that it would have been entirely competent for the defendant to introduce, first, the proof of the usury, and, second, the evidence that he had entirely paid the debt, and that there was nothing due. Now if the transfer to Blackwell & Co. were not in good faith and for value, or if they purchased with notice of the rights of defendant, then the evidence would be competent for the same purpose as against plaintiffs in error. In this the court did not err.

Some objection is made to the ruling of the court upon the question of damages, but as the jury returned a verdict for $5, and as $4.99 of that sum was remitted, it is not deemed necessary to examine this question.

The next contention is that the verdict of the jury is not sustained by sufficient evidence; that there was not sufficient proof to establish the fact that the plaintiffs were not purchasers of the note and mortgage referred to, in good faith and for value, and that the verdict should have been in their favor. It is conceded that the usury having been shown, which is perhaps not denied, the burden of proving the good faith of the transaction is upon the party relying upon the fact of the purchase, without notice of the usury. (*Darst v. Backus,* 18 Neb., 231.) While it is true that the evidence submitted to the jury may leave the question of the *bona fides* of plaintiffs in doubt, yet we apprehend that that there is no doubt but that the note and

the whole transaction were tainted with usury of rather a rapacious character. The proof shows that perhaps a short time before the maturity of the note the firm of Updike & Titus claim to have transferred the note to Blackwell & Co. Edmund Updike, of the firm of Updike & Titus, was a brother of Geo. W. Updike, of the firm of Blackwell & Co.

It is said by some of the witnesses on the part of plaintiff that the note was purchased as an investment, while it is said by others that Updike & Titus were indebted to Blackwell & Co. in a large amount, and that they desired the payment of the money, which could not be made without embarrassment to Updike & Titus, and upon their request Blackwell & Co. accepted a part of the demand in promissory notes ; so that it may be doubted whether or not the purchase of the note was a voluntary investment by Blackwell & Co., or whether they were not taken as the best means of collecting a pre-existing debt. Blackwell & Co. were familiar with the methods of Updike & Titus in the transaction of their business, and as to the rate of interest charged.

The testimony introduced by plaintiff in error is not entirely consistent with good faith on their part, and we cannot see that the verdict is so clearly against the weight of evidence as to require that it be set aside, the burden being upon plaintiffs.

Finding no error in the proceedings, the judgment of the district court must be affirmed, which is done.

JUDGMENT AFFIRMED.

THE other Judges concur.