THOMAS MERKOURAS, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED OCTOBER 13, 1917.   No. 19611.

1. Negligence: CARE REQUIRED. One should in his movements exercise ordinary care for the safety of others, but in doing so he has a right to assume that others will govern their movements as ordinary persons do in exercising care for their own safety. Only those dangers and perils reasonably to be anticipated have to be provided against.

2. Master and Servant: INJURY TO SERVANT: CONTRIBUTORY NEGLIGENCE. A railroad company, in ordering the movements of its cars, would not anticipate that two men would engage in scuffling

upon its track, especially so when the men were its employees, working in its switch-yards and momentarily expecting the approach of cars.

3. ———: ———: DUTY OF MASTER. A railroad company does not owe its employees, engaged in its yards in which engines are constantly moving, the duty of keeping a constant lookout to warn them of dangers of which they already have knowledge.

4. ———: RULE GOVERNING SERVICE: CONSTRUCTION. A rule of a railroad company, susceptible of two constructions but which has never by the railroad company been given the construction contended for by the party asserting it, which is contrary to the custom always followed, and which rule was not relied upon by the party, will not be given such construction by the courts.

5. Trial: WITNESSES: EXAMINATION: IMPROPER ARGUMENT. A party surprised by the testimony of a witness, whom he has called, may in the discretion of the court be allowed to interrogate him with respect to previous inconsistent statements for the purpose of probing his recollection and to give him an opportunity to correct his mistake, if he has made one, and also to show, so far as may be, the circumstances which induced the party to call the witness. He is not permitted, however, to prove contradictory statements of his own witness and discredit him, and it is improper for counsel in argument to go outside the evidence and assert, as of his own knowledge, contradictory statements of the witness.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed.*

*Byron Clark, Jesse L. Root, J. B. Strode and Strode & Beghtol,* for appellant.

*Wilmer B. Comstock, contra.*

CORNISH, J.

Action for damages for loss of part of foot, caused by defendant's negligence. Plaintiff recovered, and defendant appeals.

At the time of the accident plaintiff, with others, was engaged as an employee of defendant in its yards at Lincoln in putting ice in refrigerator cars. A switch-track of defendant ran along an elevated platform connected with an ice-house, so that ice could be put from it into the top of the car. A ladder led from the ground

to the platform. Two empty cars, designated as "rubbish cars," were on the track in front of the ice-house, waiting to be moved onto a place farther up the track in the yards where they were to be filled with refuse. It was after the close of the noon hour. The men had been at work in the morning, and were idle, waiting for more refrigerator cars to be moved in place for filling. While waiting, plaintiff and another employee became engaged in wrestling, and in their movements got on the track in front of the rubbish cars in the direction in which they were to be moved, both men being on the ground. There is conflict in the testimony as to how they came to be upon the track in this position. Plaintiff's testimony is that it was not voluntary upon his part; that the other employee, Johnson, had been trying to "joke and play with me;" that Johnson jumped on his back and brought him down against his will. He did not know, but thought they might have been in this position 20 minutes before the accident. While they were in this position a string of 12 refrigerator cars, for which they were waiting, was backed up, it being intended first to move the rubbish cars to their proper place and finally leave the refrigerator cars also in place. When the brakeman on the approaching cars, which had reached the two rubbish cars, had made the coupling, he climbed on the rubbish car, intending to go to the front end of the string of cars as they were moving forward. When he heard the alarm from others that plaintiff was in the precarious position, he at once gave the engineer the stop sign. The engineer stopped the moving cars, but too late to prevent the injury.

Plaintiff contends that defendant failed to exercise ordinary care for his safety, in failing to ascertain that he was on the track at the time; in failing to give warning of the approach of its cars; in failing to stop the string of cars within a reasonable time after learning of plaintiff's situation; and in failing to have someone at the front end of the string of cars as they were moving forward. The evidence does not show that any failure

on the engineer's part to ring a bell or blow a whistle caused the accident, even though such failure would have been negligence. Nor does the evidence show that the brakeman, after discovering the situation of the plaintiff, was negligent in giving the stop sign to the engineer. The brakeman, as he approached the rubbish cars for the purpose of making the coupling, and paying attention to the moving cars, would not see the men at the other end, and no doubt, upon hearing the alarm, at once gave the stop sign to the engineer to stop the cars.

The question turns on whether the defendant was negligent in failing to discover plaintiff's situation in time to have prevented the accident. A railroad track in use is a dangerous place anywhere, more dangerous in switch-yards where cars are being continually moved from place to place. One who would voluntarily lie down or place himself upon a railroad track when cars are expected to move over it would be guilty of gross negligence, and ordinarily, would blame himself only if accident resulted. The rule of negligence is one of ordinary care under the circumstances. One should in his movements exercise ordinary care for the safety of others, but in doing so he has a right to assume that others will govern their movements as ordinary persons do in exercising care for their own safety. In other words, only those dangers and perils reasonably to be anticipated have to be provided against. A railroad company, in ordering the movements of its cars, would not anticipate that two men would engage in scuffling upon its track, especially so when the men were its employees, working in its switch-yards and momentarily expecting the approach of cars. The fact that one of the men engaged in wrestling was not there by his consent, while it may bear upon the question of negligence upon his part, has no bearing upon the question of negligence on the part of the railway company.

The courts recognize the fact that a railroad yard, with numerous tracks connected by switches, where cars and engines are constantly moving, is essentially a place

of danger even in the day-time. *Hoffman v. Chicago &
N. W. R. Co.,* 91 Neb. 783; *Jones, Adm'r, v. Virginian R.
Co.,* 74 W. Va. 666, L. R. A. 1915C, 428; *Norfolk & W.
R. Co. v. Belcher's Adm'x,* 107 Va. 340; *Chicago, R. I.
& P. R. Co. v. McIntire,* 29 Okla. 797. In *Hoffman v.
Chicago & N. W. R. Co., supra,* where an employee, a
brakeman, was rightfully on the track, crossing it on his
way home from work, we held: "In an action against a
railroad company for causing the death of a brakeman
by backing a car against him in the night-time, evidence
that there was no light on the car, that there was no
brakeman thereon, and that it was moved without notice
or warning," was insufficient, in the absence of a custom
requiring such notice or warning, to prove actionable
negligence, the brakeman being familiar with the switch-
yards. In the instant case the plaintiff had been en-
gaged in this employment for 11 days preceding the in-
jury. It was in the day-time, and, as above stated, the
employees were waiting for the cars. While there is
evidence that when at work the employees might occa-
sionally get on the track to pick up ice or remove rub-
bish, it shows that there was no occasion for them to do
so at this time. They would not be expected to be there
and were not there for any such purpose. The plaintiff's
testimony is that he did not get within five feet of the
track until Johnson jumped on his back. If these men
had been on the track in any ordinary way reasonably to
be anticipated, whether engaged in their work or not,
upon hearing the cars approaching, as plaintiff swears
he did, they would have had ample time to get off the
track before the cars, going at about two miles an hour,
reached them. Of course, if there had been a man
stationed at the front end of the two rubbish cars, the
accident would not have occurred. If the only occasion
for stationing a flagman at such place would be to pre-
vent accident to persons lying down or scuffling upon
the track, it would be unreasonable to require it. Per-
sons in switch-yards are expected to be on constant look-

out for moving cars. If, however, there were such a rule and custom, negligence in a proper case could be predicated upon failure to observe it. In such case, where the allegations of negligence are specific, the rule, the plaintiff's reliance upon it, and the defendant's failure to observe it should be pleaded as negligence, unless the rule is expected to be used merely as an admission. No such rule or custom was pleaded in this case.

It is contended by plaintiff that there was such a rule. In defendant's book of instruction to employees, under the head, "Movement of Trains," rule 102 reads as follows: "When cars are pushed by an engine (except when shifting and making up trains in yards) a flagman must take a conspicuous position on the front of the leading car and signal the engineman in case of need." This evidence was admitted over defendant's objection. The parties dispute the meaning of this rule. Defendant contends that it refers only to the movement of trains, and that the string of cars in question did not constitute a train; that trains are distinguished by a flag at the rear displaying a marker. Plaintiff argues that, if they were not shifting trains or making up trains, it must come within the rule. It is answered that you do not shift trains but cars. There is room for different constructions of the rule. The evidence is uncontradicted, however, that the rule had never been interpreted as plaintiff contends; nor had there ever been a custom of stationing flagmen at the front in such movements of cars in the yards as the one in hand. This being the case, the question—what is the right interpretation of the rule—makes no difference. A rule which has never been observed or relied upon is the same as one abrogated. 1 Elliott, Railroads (2d ed.) sec. 202a; 3 Elliott, Railroads (2d ed.) sec. 1282; 3 Labatt, Master and Servant (2d ed.) secs. 1138, 1139.

We are of opinion that no negligence, based upon custom or rule of the defendant company to have a flagman stationed at the front end of the approaching string of cars, was shown in this case. Nor does the evidence

show the defendant negligent in failing to observe the rule invoked by plaintiff as laid down in *Chicago, B. & Q. R. Co. v. Wymore,* 40 Neb. 645, that a railroad company "is bound in all cases to exercise reasonable care to avoid injuring all persons who are known to be, or who may be reasonably expected to be, upon its right of way," for the reason that at the time of the accident the plaintiff was neither known to be, nor could reasonably be expected to be, in the situation in which he was.

In *Bryant v. Beebe & Runyan Furniture Co.,* 78 Neb. 155, where employees knew of a defect in a machine which caused the injury, yet voluntarily placed themselves in a position of peril with respect thereto, we held: "To warrant a finding that a negligent act or omission, not amounting to a wanton wrong, is the proximate cause of an injury, it must appear that the injury was a natural or probable consequence thereof, and that it ought to have been foreseen in the light of attending circumstances."

"It is within the discretion of the trial judge to allow counsel to ask a witness called by him, who takes him by surprise by his testimony, whether the witness had not at a prior time made a statement to him contradictory of or inconsistent therewith." *Cady Lumber Co. v. Wilson Steam Boiler Co.,* 80 Neb. 607. This is permitted, to probe the witness's recollection, and show the circumstances which induced the party to call him. The party, however, is not permitted to prove his contradictory statements by other witnesses; otherwise, parties might call a witness merely for the purpose of getting in his contradictory statement. In the instant case, the plaintiff was permitted to put these questions to the witness Johnson. Afterwards plaintiff sought to impeach the witness by testimony of the plaintiff to show contradictory statements. The evidence was afterwards stricken out. In his argument to the jury, counsel for plaintiff made statements as of his own knowledge, which, if true, were impeaching and directly contrary to the statements made by the witness. This was improper conduct. The

court sustained objection to the remarks of counsel, but did not caution the jury to disregard the remarks made. This caution should have been given.

For the reasons given in this opinion, the judgment of the trial court is reversed and the cause remanded for further proceedings.

REVERSED.

LETTON, J., not sitting.

ROSE, J., dissents.

MORRISSEY, C. J., dissenting.

Plaintiff recovered a judgment for $2,500 for the loss of part of his foot. He was an employee of defendant and was properly on its right of way. It is alleged, and I think shown to a reasonable certainty, that he sustained his injury because defendant in disregard of its own rules failed to keep a man as a lookout on the front of the cars it was switching. Had defendant observed its own rules the injury would not have been inflicted.

The jury, after being properly instructed, resolved all the disputed questions in favor of plaintiff, and I therefore dissent from the majority opinion.