ESTHER M. JESSUP, ADMINISTRATRIX, APPELLANT, V. JOSEPH M. DAVIS, APPELLEE.

FILED NOVEMBER 19, 1926. No. 24265.

1. Trial: INSTRUCTIONS. In jury trials, plaintiff and defendant, alike, are entitled to have the issues of fact, presented by the pleadings, submitted to the jury without the introduction of extraneous evidence that may mislead them or divert their minds from a consideration of evidence pertinent to the real issues.

2. Negligence: AUTOMOBILES:. GRATUITOUS CARRYING OF PASSENGER: CARE REQUIRED. Where the owner of a private motor vehicle gratuitously carries another person therein as a passenger, he owes such passenger the duty of exercising ordinary care in the operation of the vehicle, and will be liable in damages if his failure to exercise such care is the proximate cause of injury to his passenger.

3. ———: JOINT ENTERPRISE. Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects and purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto.

4. Appeal and Error: INSTRUCTIONS: APPLICABILITY. Instructions to a jury that are inapplicable to the proved facts, and which are calculated to, and probably do, mislead the jury, will, ordinarily, constitute reversible error.

5. ———: ———: ASSUMPTION OF FACTS. Ordinarily, it is error for the court in its instruction to assume the existence of a material fact as to which there is a conflict in the evidence.

(1)

6. **Trial**: WITNESSES: CROSS-EXAMINATION. "Where a plaintiff in a personal injury action seeks by appropriate interrogatories on the cross-examination to discover whether the defendant is indemnified from loss by an insurance company, it is error for the court to sustain an objection to interrogatories which tend to develop the fact on that question." *Miller v. Central Taxi Co.*, 110 Neb. 306, reaffirmed and promulgated as a rule of practice.

APPEAL from the district court for Adams county: WILLIAM A. DILWORTH, JUDGE. *Reversed.*

*1. E. Montgomery* and *James & Danly*, for appellant.

*Stiner & Boslaugh* and *Dressler & Neely, contra.*

*Hall, Cline & Williams, W. C. Fraser, F. Hird Stryker* and *Brogan, Ellick & Raymond, amici curiæ.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

This action was brought by Esther M. Jessup, as administratrix of the estate of her deceased husband, Ursa S. Jessup, to recover damages for his death, alleged to have been caused by the negligence of defendant in so operating his automobile, while her husband was riding therein as an invited guest, as to cause the car to skid and overturn, thereby inflicting fatal injuries on Mr. Jessup.

In the answer it is admitted that while Mr. Jessup was riding with defendant in his car it overturned, and that Mr. Jessup received injuries which caused his death. Defendant denies that he was negligent, and alleges that the accident and resulting injuries were caused by the negligence of Mr. Jessup in grasping the steering wheel of the car and suddenly changing its course, thereby causing it to overturn. It is further alleged in the answer that plaintiff and defendant were both engaged in a joint enterprise at the time, and that because of such fact plaintiff is not entitled to recover. The issues of fact were submitted to a jury. De-

fendant had the verdict and judgment.   Plaintiff appeals.

The pertinent facts out of which this controversy arises may be summarized as follows:

On June 26, 1922, Mr. Jessup and defendant, in the latter's Cadillac touring car, left Hastings, Nebraska, over the D. L. D. highway, intending to go to Clay Center, Nebraska. While driving eastward at a speed of from 30 to 40 miles an hour, defendant, on nearing an intersecting highway, observed another automobile traveling south at a moderate rate of speed, somewhat nearer to the intersection than the defendant.   When defendant first observed the other automobile he was driving on the south or right-hand side of the traveled highway.   In order to avoid a collision, he turned slightly to the left, applied his brakes, and passed to the rear of the south-bound car.   The course of defendant's car was then changed slightly so as to head directly east and on the north or left-hand side of the traveled portion of the road.   After having safely passed the intersection a distance of 25 or 30 feet, his car seems to have turned abruptly to the south, almost at right angles, and to have overturned, and Mr. Jessup received injuries from which he shortly afterwards died.

The acts of negligence complained of are that defendant was driving at an unlawful and reckless speed, particularly at the intersection of the highway, so that he lost control of his car; that he jumped from his car, leaving it without a driver and without any one to control it, and that, as a consequence, the car skidded and turned over.   The evidence as to whether defendant jumped from the car at the intersection and before it overturned is in conflict.   Defendant testified that he remained in the car until it overturned; that Mr. Jessup, sitting on the right-hand side of the car, without warning, suddenly grasped the steering wheel and turned it so as to turn the car abruptly to the right, thereby causing it to overturn.   After the accident Mr. Jessup was unable to talk and died the next day without making any statement as to how the accident occurred.   One C. J. Moger, who was on the highway about 300 yards north of the inter-

section and driving toward it at the time of the accident, testified that defendant jumped from the car at or near the northeast corner of the intersection. A number of witnesses, who examined the scene of the accident immediately after it occurred, testified that the tracks made by defendant's car showed that just before it entered the intersection it was traveling in a northeasterly direction; that the brakes had been applied so as to cause the wheels to lock and drag for a distance of from 50 to 65 feet; that this dragging mark extended about two-thirds across the intersection and did not thereafter appear, which would indicate that the brakes had been released. The highway was graded and there was a wide, shallow ditch on either side of the highway. Defendant's car at no time left the graded portion of the road, but as it passed over the intersection in going east it was very close to the north edge of the graded portion of the road, and only a few inches from the shoulder of the grade.

It is further disclosed that the defendant was the cashier of the Exchange National Bank of Hastings; that for a year or more Mr. Jessup had from time to time been collecting bad paper for the bank; that immediately prior to the accident he had been endeavoring to make collection on a note, secured by a chattel mortgage, and had ascertained that the maker of the note had disposed of the mortgaged property. Apparently, the maker of the note lived in Clay county. Mr. Jessup and defendant, at the time of the accident, were en route to Clay Center for the purpose of instituting a criminal action against the maker of the note for disposing of the mortgaged property. It appears that Mr. Jessup suggested this course as a means of enforcing collection on the note. It is also disclosed that Mr. Jessup had planned, prior to this time, to go to Clay Center, and had arranged with defendant, cashier of the bank, to accompany him, for the purpose of swearing to a criminal complaint. On previous trips Mr. Jessup had used his own automobile, but on the morning in question he stated to defendant that he did not have his car with him, that his

wife was using it, and asked defendant if he could take his automobile to which defendant assented.

Plaintiff complains of the court's fifth and seventh instructions to the jury, wherein they were informed that, if the drive to Clay county was made at the request of Jessup, and if Jessup and defendant had joint control over the movements of the automobile and were engaged in a joint enterprise, in which each had a financial interest, then any negligence of defendant would be imputed to Jessup and preclude any recovery by plaintiff. The instructions may be correct as abstract propositions of law. The facts, however, do not warrant the inference that defendant and Jessup had a joint financial interest in the drive, or that they had joint control over the movements of the car. It is true, both were desirous of going to Clay Center. Jessup was a gratuitous passenger. Both, in a sense, may have had some interest in the object of the trip, but it was not a joint financial interest. If the bank's note had been collected, Jessup would have received a commission; the bank would have received the benefit by the collection of its note, and defendant, as a stockholder, might have received an indirect benefit, but this does not constitute a joint enterprise in driving the car, within the meaning of the law of negligence. Defendant, not Jessup, was in control of the car. Jessup had no authority over defendant and no authority to direct the movements of the automobile. Defendant was a private, gratuitous carrier and, as such, owed Jessup the duty to exercise ordinary care in the operation of the automobile, and would be liable in damages if his failure to exercise such care was the proximate cause of injury to his passenger. From the evidence, the jury might have found that defendant jumped from the car while it was in motion, and that because the car was left without any one to control its movements it overturned and inflicted the injuries which caused the death of Mr. Jessup. We do not doubt that these facts would warrant a finding of actionable negligence.

There is a marked discord in the reported decisions as to what is necessary to constitute a joint enterprise, as applied to the law of negligence, and also as to what is essential to impute to a person riding in an automobile the negligence of the driver in the operation of the machine.

In *Lochhead v. Jensen*, 42 Utah, 99, plaintiff was riding in the rear seat of an automobile as an invited guest. The car was overturned, and the passenger met her death. In an action brought against the owner and driver, it was held that, since the passenger was exercising no control over or direction of the operation or handling of the machine prior to the time it was overturned, defendant's negligence in the operation of the machine could not be imputed to the decedent.

In *Crescent Motor Co. v. Stone*, 211 Ala. 516, it was held: "Parties are not engaged in a joint enterprise within the law of negligence, unless there is a community of interest in the objects or purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other in respect thereto.

"Driver's negligence cannot be visited on a passenger, whether for reward or not, unless passenger has charge or control of vehicle or driver."

In *Cunningham v. City of Thief River Falls*, 84 Minn. 21, it was said: "Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto."

This court, in *Kepler v. Chicago, St. P., M. & O. R. Co.*, 111 Neb. 273, held: "One who is injured in a railroad crossing accident while riding in a private vehicle may recover from the railroad company if it was guilty of negligence proximately causing said accident notwithstanding that negligence on the part of the driver of the vehicle may have contributed thereto, providing that she was herself

free from negligence, and was not on a matter of joint enterprise or common concern with said driver, and had no authority or control over him." In that case the driver of the automobile was taking a relative to the village of Herman, Nebraska, for the purpose of mailing some letters.

In *Brubaker v. Iowa County,* 174 Wis. 574, it was held: "A husband and wife moving to another city, where the husband intends to teach and the wife to attend college, with a view to obtaining a position, are not engaged in a joint enterprise, so as to impute to the wife the negligence of the husband while driving in an automobile to the city to which they were moving." In that case stress was laid upon the point that the wife had no direction or control over the husband's movements or control of the car.

Instructions to a jury that are inapplicable to the proved facts, and which are calculated to, and probably do, mislead the jury, will, ordinarily, constitute reversible error. The instructions complained of were not applicable to the facts, were calculated to mislead the jury to the plaintiff's prejudice, and their giving constituted prejudicial error.

Error is predicated on the giving of the tenth instruction because it assumes it to be a fact that Jessup grasped the steering wheel of the car just before it overturned. The only direct evidence on that question was that given by defendant, who testified that Jessup did grasp the steering wheel. However, there was other evidence tending to show that, previous to this, defendant had jumped from the car and was not in a position to see or know whether Mr. Jessup grasped the steering wheel. Under such circumstances it was error for the court to invade the province of the jury and assume as a fact that which might, from the evidence, be determined either way.

Other instructions are complained of, but we have examined the instructions and think that, when taken in connection with the charge as a whole, they were not erroneous.

The foregoing opinion and the first five points of the syllabus, prepared by Good, J., were unanimously agreed

upon by the members of this court. The case must there-
fore be reversed. However, the sixth point in the syllabus,
and the parts of the opinion pertaining thereto, have the
approval of a majority only.

This court divides in this case solely upon the question
of adherence to the doctrine announced in *Miller v. Central
Taxi Co.*, 110 Neb. 306, stated as follows: "Where a plain-
tiff in a personal injury action seeks by appropriate inter-
rogatories on the cross-examination to discover whether the
defendant is indemnified from loss by an insurance com-
pany, it is error for the court to sustain an objection to in-
terrogatories which tend to develop the fact on that ques-
tion."

The district court failed to follow the rule above an-
nounced, and the plaintiff urges this fact as ground for
reversal. Plaintiff's contentions are controverted not only
by the defendant, but the interests and viewpoint of liabil-
ity insurance companies generally, in opposition thereto,
have been most ably presented in oral argument and by
three written briefs filed by *amici curiæ*.

The question actually presented by the record in the case
before us may be said to be somewhat limited in its scope.
Considered as an adjudication merely, the opinion would
necessarily be likewise limited, for the obvious reason that
any conclusion announced by this court on matters not pre-
sented by the record itself would amount to *obiter dictum*
only.

This case from the standpoint of *amici curiæ* is presented
on the basis that "the general provisions of indemnity in-
surance contracts are familiar to every member of the
court;" that, under existing conditions, to permit the in-
troduction of evidence, and allow the suggestions to be
made, that the defendant in a personal injury suit is pro-
tected by such insurance contracts operates not only to
prejudice his case before the trial jury, but, as a practical
matter, frequently results in a denial of justice; that the
rule announced in *Miller v. Central Taxi Co.*, *supra*, per-
mitting this to be done, therefore should be wholly rescind-

ed. Notwithstanding the limited scope of the record in the case before us, we believe that the broader questions presented may properly be considered and now determined by the announcement of a rule to govern further proceedings in which the questions here presented may be involved.

In 1920 an amendment to the Constitution of Nebraska was adopted which appears as section 25, art. V, and which provides in part: "For the effectual administration of justice and the prompt disposition of judicial proceedings, the supreme court may promulgate rules of practice and procedure for all courts, uniform as to each class of courts, and not in conflict with laws governing such matters." This section was before this court in *Penhansky v. Drake Realty Construction Co.*, 109 Neb. 120. The doctrine was there announced: "The new constitutional provisions (Const., art. V, sec. 25) expressly conferring upon the court the power to change rules of practice 'not in conflict with laws governing such matters' (which we construe in this connection to mean 'statutes governing such matters'), the rule as to the contradiction of witnesses stated in *Blackwell v. Wright,* 27 Neb. 269, *Masourides v. State,* 86 Neb. 105, and *Merkouras v. Chicago, B. & Q. R. Co.,* 101 Neb. 717, is set aside and the foregoing adopted." See, also, *Nichols v. State,* 109 Neb. 335.

It is to be noted that, while this court has announced the adoption of "rules" in opinions referred to in disposing of cases before it, the language of the constitutional provision is broad and does not limit the rule announced to the facts of any case, but justifies the announcement of any rule "which the court may deem necessary for the administration of justice." With reference to the rule of practice, therefore, this court stands in the same relation that the legislature does with reference to substantive law. Within the limitation of the written law, the one consideration that controls is public policy. This conclusion seems to be supported by the history of the exercise of the rule-making power in all jurisdictions where such powers have been conferred since the adoption of the "Supreme Court of Judica-

ture Act, 1873," in England, and its amendments passed in 1875. Therefore, in view of the fact that the reversal of this case is in no manner affected by the decision of the points now presented, it is thought that public interests will be promoted by a consideration of the matter on the broad basis suggested by the *amici curiæ* and the determination of the majority of the court announced as a rule of practice.

The gist of the contention of those seeking the rescission of the rule announced in *Miller v. Central Taxi Co., supra,* is that in a personal injury action the discovery by the trial jury of an existing relation between insurer and assured, as to facts in controversy, operates to prejudice the jurors to such a degree as to assure the return of a verdict against the defendant irrespective of the preponderance of the evidence on the issues involved; and the mere suggestion of such condition by plaintiff's attorney is fraught with so serious consequence that the same should be deemed ample ground of mistrial.

Assuredly, a relation between parties to be prejudicial would depend in part, at least, upon what that relation actually is. It is obvious that, so far as the question before us is concerned, the contaminating relation is contractual. Section 7882, Comp. St. 1922, provides: "No insurance policy or certificate of any kind shall be issued or delivered in this state unless and until a copy of the form thereof has been filed with the department of trade and commerce and approved by it." The records of this department, therefore, will afford us all facts necessary for the determination of this matter as applied, of course, to the adoption of the proposed rule. We find that there are many similarities and substantial agreements in the provisions of the policies filed as required by the above act.

If we take a typical policy, we find the character of indemnity, provided by the policy, is set forth as an insurance "against loss or expense, arising or resulting from claims upon the assured for damages in consequence of an accident occurring within the limits of the United States and Canada.

Jessup v. Davis.

during the term of the policy, by reason of the ownership, maintenance or use * * * of the automobile or any of the automobiles enumerated and described herein resulting in" an injury to persons, or damage to property, the company's liability being ordinarily limited to $5,000.

It also provides: "In addition to the above, the company does hereby agree (1) to defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim, whether groundless or not, on account of damages suffered or alleged to be suffered under the circumstances hereinbefore described; (2) to pay the expenses incurred in defending any suit described in the preceding paragraph, also the interest on any judgment within the limits of the insurance hereby granted and any costs taxed against the assured on account thereof; (3) to reimburse the assured for the expense incurred in providing such immediate surgical relief as is imperative at the time of any accident covered hereunder."

And the further paragraphs provide: "The company reserves the right to settle any claim or suit. The assured shall not voluntarily assume any liability; nor interfere in any negotiation or legal proceedings conducted by the company on account of any claim; nor, except at assured's own cost, settle any claim; nor, without the written consent of the company previously given, incur any expense, except as provided herein for immediate surgical relief at time of accident. Whenever requested by the company, the assured shall aid in securing information, evidence and the attendance of witnesses in effecting settlements and in defending suits hereinbefore referred to. The assured shall at all times render to the company all reasonable cooperation and assistance. In case of payment of loss and/or expense under this policy, the company shall be subrogated to all rights of the assured against any person, copartnership, corporation or estate as respects the amount of such payment, and the assured shall execute all papers required and shall cooperate with the company to secure to the company such rights."

While there is some diversity in the provisions of the policies on this subject, in many policies at least the assured is plainly indemnified against loss only, and not against liability. And if we consider the provisions of the policy, above quoted, in connection with "instructions to the assured," we may visualize the transaction which appears in the event of an accident, as follows: "Required for assured: Stop at once, obtain name and address of injured and where taken after accident. Obtain names, addresses and telephone numbers of witnesses, and, if other car involved, name and address of owner, license number, make and number of car and in what company insured. Telegraph or telephone the home office or the nearest branch office the above information, giving also the data regarding owner, car and policy appearing on the reverse of this card. Follow verbal report at the earliest opportunity with written statement on the claim blanks provided. Do not admit liability. Make no comment or statement regarding the accident to anyone except police or an identified representative of this company."

On the part of the insurer is necessarily involved, from the nature of the business in which it is engaged, its maintenance of a staff of attorneys, investigators and experts; on occurrence of an accident in which its policyholder is involved, upon "immediate notice" received, the prompt appearance of its efficient and paid investigators upon the scene, thorough investigations of the facts, interviews with all parties (if possible) and of all persons having knowledge of facts and full reports of the same, together with measures taken to preserve and secure favorable evidence, maps and photos. Thereafter the insurer settles or litigates, as the conditions of the accident, the situation and standing of the parties involved, views of monetary considerations, may deem wise.

If litigation follows, the defense is to be conducted "in the name of the defendant," it is true, but by the insurer's attorneys, along lines wholly determined by the insurer, and to the extent that the insurer's interests may determine.

The witnesses, whose testimony may be used in behalf of the defendant, are exclusively selected by the insurers, and are all obtained by efforts of its agents, and are necessarily in many cases employees, employed for the purpose of assuring success in expected litigation. If the resulting decision be finally adverse, to the extent of the policy, the insurer satisfies the judgment and defrays the cost of attorneys and expenses of litigation. Indeed, after the occurrence of the accident and notice to the insurer, the entire matter is within the absolute control of the insurance company. It litigates or settles as its interests may determine. The assured has, by his agreement, waived all right to object, influence, or in any manner control the ensuing proceedings whether of litigation or settlement. He, thereafter, acts and participates only to the extent and in the manner the insurer may request or direct.

As to its general nature it may be observed in passing that the transaction before us is clearly within the reason upon which the early English doctrine of champerty and maintenance was based. 11 C. J. 234, sec. 5. Even so, the fact of liability insurance of itself is not proof of negligence, and the mere fact of insurance alone should not be determinative in the return of a jury's verdict But, on the other hand, the existence of insurance should not deprive the injured of his ordinary rights of proof. To the extent of its policy the insurer must be considered as at least one of the real parties in interest. This court is now invoked to announce a rule of practice which would afford insurance companies, real parties in interest and actually controlling litigation, the benefits of a "benevolent judicial concealment" therein, so that their identity, presence and interest may remain totally unknown to the jurors before whom the litigation is tried. In justice to opposing litigants, can this request be complied with?

The acid test of truth in judicial proceedings is cross-examination. It is admittedly the most efficacious agency which the law has devised for the discovery of truth. The ordinary rule is, by cross-examination the situation of the

witness with respect to the parties in interest, and to the subject of litigation, his interest, his motives, his inclination and prejudices, may all be fully investigated and ascertained, and submitted to the consideration of the jury before whom he has testified, and who have had the opportunity of observing and determining the just weight and value of his testimony. 1 Greenleaf, Evidence (16th ed.) sec. 446.

Bias or interest of a witness is always recognized as proper to be considered by the jury. 5 Chamberlayne, Modern Law of Evidence, sec. 3752. And the fact of business relations with, or employment by, a party may be shown. 5 Chamberlayne, Modern Law of Evidence, sec. 3753.

Where the witness has received or has been promised any reward for giving testimony, it is a proper subject of cross-examination. *Matter of Will of Snelling*, 136 N. Y. 515; *Blenkiron v. State*, 40 Neb. 11.

In this connection it is not to be forgotten that one of the valuable considerations the defendant has given for his indemnity is his express promise to "at all times render to the company reasonable cooperation and assistance, and whenever requested by his company to aid in securing information and evidence *** and in defending suit brought."

In view of these obligations, can it be said that such a defendant does not sustain business relations with or employment by the real party in interest which would form a proper subject of cross-examination under the rule above quoted? So, too, when the "efficient investigator," the physician, and the hired expert witness, and other witnesses, all of whom may regularly and permanently be employed and compensated by the insurance company, whose real interests are involved in the suit, are by it produced and tendered as witnesses in its behalf as real parties in interest even though its identity as such is not shown by the record, does the fact that the defense, by secret agreement, is made in the name of the third party operate to suspend or change the rules of cross-examination?

And though these witnesses might truthfully answer that they were strangers to the named defendant, and were not employed by and, in fact, sustained no business relations whatever with him, does justice demand that such questions and answers should constitute the limit of the permitted cross-examination?

This appears to be the controlling reason upon which the opinions of this court, attacked in this proceeding, have been based. The last pronouncement of this tribunal is the case of *Miller v. Central Taxi Co.*, 110 Neb. 306. His honor, Judge Dean, in the course of the opinion approved by us in that case, stated the facts, upon which the syllabus was written, to be as follows: "Counsel complains of misconduct on the part of plaintiff in that he offered to show that Mr. Borsky, the president of the defendant company, went to the viaduct soon after the accident to make some measurements, and that he took with him an attorney for an insurance company (presumably the company interested in the suit) to assist him who was not an attorney employed by him in the present case. The offer was denied. The argument is that plaintiff sought by this means to convey to the jury the intelligence that the company was indemnified against loss by an insurance company. Complaint is also made in that an apparent attempt was made to convey the same intelligence to the jury in the cross-examination of Mr. Borsky. The witness was not permitted to answer. We think the court erred in its ruling. The question is not new in this state. We held in a like case that, if the defendant was not resisting plaintiff's demand in its own behalf, but that some insurance company was defending, under the cover of defendant's name, plaintiff had a right to make that fact known to the jury. *Egner v. Curtis, Towle & Paine Co.*, 96 Neb. 18."

Turning to the *Egner* case we find the following approved by us and placed in the syllabus: "(1) Where a defendant, in a personal injury action, is indemnified by an employers' casualty insurance company, it is proper for plaintiff's counsel to show such fact when impaneling the jury, and

to inquire of each juror upon his *voir dire* if he is a stock-holder or agent, or in any manner interested in such company.   (2) In an action for personal injuries plaintiff, to prove an admission of liability, may show a demand made on defendant for payment for his injuries, and that defendant, through its general manager or duly authorized agent, made such admission.   (3) And in such a case, if such general manager or duly authorized agent puts a refusal of defendant to pay solely on the ground that it is insured and for that reason it cannot pay, plaintiff is entitled to have the conversation admitted and the evidence submitted to the jury, under suitable instruction, for them to determine what the true import of the conversation was."

We would suggest that if it is competent to prove such a statement by the appearing defendant, why would it not be competent to prove the real agreement between the insurer and the insured, as the contract certainly contains such a provision, and such a situation is presented to every court in such a case?   As to this right under our holding, we are strengthened by paragraph 4 of the syllabus in the *Egner* case, wherein we held: "It appears that after plaintiff was injured a physician unknown to, and without authority from, him, was called to treat his injuries, and without any subsequent employment by plaintiff continued to treat him for a considerable period of time.   Upon the trial plaintiff's counsel called such physician to the witness-stand, and attempted to show by him who employed him.   *Held,* not misconduct on the part of counsel."   In the course of the opinion we use the following language:   "We are unable to give our assent to this contention for two reasons:   First, in our judgment, it could not have prejudiced the defendant with the jury; second, the error of the court was in not over-ruling the objection, as it should have done.   Upon this point we concede that the authorities, cited from other states, are conflicting; but we think the correct rule is the one announced in *Foley v. Cudahy Packing Co.,* 119 Ia. 246; *Brusseau v. Lower Brick Co.,* 133 Ia. 245; *Spoonick v. Backus-Brooks Co.,* 89 Minn.

354; *Antletz v. Smith,* 97 Minn. 217; *Citizens Light, Heat & Power Co., v. Lee,* 182 Ala. 561; *Swift v. Platte* (on rehearing) 68 Kan. 10; *Iroquois Furnace Co. v. McCrea,* 191 Ill. 340. In *Spoonick v. Backus-Brooks Co., supra,* it is said (p.359) : 'It is no answer to this to say that the insurance company is not named as a party to this action, for the bias of the juror is not to be determined by this fact. Nor is it an answer to say that counsel may protect his client by using a peremptory challenge. It is his right first to learn the facts, and he must do so to exercise intelligently his right to challenge peremptorily. * * * In order to secure to litigants unbiased and unprejudiced jurors, we are compelled to hold that plaintiff's counsel had a right to ascertain whether there was such a relationship between the persons called as jurors and the insurance company, a corporation vitally interested in the result, which would disqualify these persons, because, by implication, they would be biased and prejudiced.' " In furtherance of such conclusion we cited *Anderson v. Duckworth,* 162 Mass. 251. The holding in the *Egner* case was followed in *Koran v. Cudahy Packing Co.,* 100 Neb. 693, wherein Judge Letton, in the course of the opinion, stated : "However, in *Egner v. Curtis, Towle & Paine Co.,* 96 Neb. 18, this court held that such examinations (on *voir dire)* may be permitted, and the district court was justified in following that decision."

It is to be noted that the *Egner* case was decided in 1914, and the case of *Miller v. Central Taxi Co., supra,* was decided in 1923. And though our biennial legislature has been in regular session, there has been no legislative protest or objection to the principles announced in these cases.

In fact, it seems to me that we are committed to the doctrine that the insurance company, under its contract of insurance with the defendant, becomes and is the sole interested party defendant, at least to the extent of its insurance. In a very recent case, to wit, *Cox v. Detroit United Ry.,* 208 N. W. 745 (234 Mich. 597) the following is announced as the law :

"In action by soldier in United States army for injuries in collision between motor vehicle, in which he was riding, and defendant's street car, defendant's evidence that plaintiff was not real party in interest because of War Risk Insurance Act, section 313, as added by Act Congress, Oct. 6, 1917 (U. S. Comp. St. Ann. Supp. 1919, sec. 514tttt), *held* erroneously excluded, though such defense was not specially pleaded; Comp. Laws 1915, sec. 12353, providing that every action shall be prosecuted in name of real party in interest, being mandatory."

We have a similar section providing that all actions shall be prosecuted by the real parties in interest. The reason for such a section is so that the actual status of the case may be apparent to the entire court, including the jury. If this is the reason, then why is it not just as important that the real parties in interest as defendants shall appear? We have heretofore arrived at the conclusion that the contract of insurance between the insurance company and the insured, in such a case as this, makes the insurance company the unquestioned party in interest, and, not only that, but the unqualified, controlling party interested in the defense. The sole object of such a contract as that existing between the insurance company and the insured, as well as the principle now contended for, is that the case may proceed in the name of an ostensible party controlled and directed by the insurance company, both as to himself and his witnesses, as well as the attorneys, and yet the court and the jury shall be wholly oblivious of that fact.

If motives, bias and interest of witnesses, and the situation of witnesses, with respect to parties and the subject of litigation, are each a proper and necessary subject for consideration of juries, cross-examination must proceed upon the basis of the actual facts of the case as to the real parties in interest who will be substantially affected by the outcome. What may be essential to the true development of the actual facts, in order that these actual relations may be shown, certainly is proper cross-examination. It would seem, therefore, that questions eliciting the fact of the ex-

isting insurance and the relations sustained by each witness to the insurance company must be permitted. If they are not permitted, the ordinary right of cross-examination is denied, and a litigant is thus deprived of his "rights of proof" to which the ordinary application of the rule entitles him.

It may be said in passing that this court is committed to the fact that, as a matter of law, where a party offers a witness in proof of his cause, he vouches for him, that is, represents him as worthy of belief. *Masourides v. State,* 86 Neb. 105; *Krull v. Arman,* 110 Neb. 70; *Nathan v. Sands,* 52 Neb. 660.

In the form of the proceeding before us the real defendant, though unnamed apparently, as a matter of fact, seeks to avail himself of the benefit of the vouchments of the ostensible party defendant. Under the terms of the contract of insurance, it cannot be said that the witness apparently called and vouched for, as to veracity and standing by the apparent defendant, is, in fact, his witness, when he is actually selected and called as the witness of the real party in interest, the insurance company, and entitled to no other vouchment. Indeed, the entire theory of legal procedure outlined in these contracts for liability insurance contemplates a proceeding carried on secretly, by a real, though unknown, party in interest, making use of concealment and deception. Its essential nature is therefore incompatible with an "open court" and judgments publicly and openly arrived at. To compel and permit such proceeding is to countenance and participate in what is tantamount to a fraud.

Lastly, it is thought the procedure contemplated in these liability insurance contracts, whereby the defense, though actually made and controlled by the insurance company, is concealed by the name of the ostensible defendant, is opposed to a just and enlightened public policy. It is certainly patent that for courts to encourage, recognize, enforce and aid, especially by means of a benevolent concealment, the carrying out of this portion of the contracts of

insurance companies, is to judicially invite, conceal and promote into the liability insurance world evils similar in nature to those referred to in *Lancashire Ins. Co. v. Bush,* 60 Neb. 116. In addition, the invitation thus extended would carry with it assurance to those tempted to wrong that there would be no relief for the unfortunates, and no retribution for the wrongdoer, because the wrongdoers would judicially be concealed, and in the records of our courts their names would not appear or be known. Still, underneath the veil of procedure, or behind the mask, maintained by precedent, will inevitably be developed in truth, with passing time, the same vexatious and oppressive resisting of payments, justly due, the same persistent endeavor to secure for themselves, under and in the name and shadow of the assured, an escape from just liability that characterized the fire insurance business of the recent past.

It would seem that the doctrine of "Open Court" with judgments openly arrived at and also "Equality before the law" are principles that public good cannot permit to be limited, qualified, or abandoned, openly or in secret, judicially or otherwise.

It follows, therefore, there must be one rule of cross-examination applied irrespective as to whether litigants are natural persons or corporate bodies, and that the rule in *Miller v. Central Taxi Co.,* 110 Neb. 306, is right and should be adhered to. Therefore, this court, under the provisions of section 25, art. V, of the Constitution of Nebraska, for the effectual administration of justice, reiterates and confirms the doctrine that, "Where a plaintiff in a personal injury action seeks by appropriate interrogatories on the cross-examination to discover whether the defendant is indemnified from loss by an insurance company, it is error for the court to sustain an objection to interrogatories which tend to develop the fact on that question." *Miller v. Central Taxi Co., supra.* And this rule is hereby promulgated as a rule of practice for all courts in this jurisdiction.

And indeed, on broader grounds, when we consider the enhanced efficiency of the automobile, the ever-increasing

Jessup v. Davis.

numbers in active use, the increased improvements of our highways, and the increase in the number of protective policies of insurance issued to automobile owners, and then call to mind the astounding list of casualties on our public roads we are impelled to seek for the cause of this wreckage of property and destruction of life and limb. It cannot be the automobile, or the highway, alone. If not there, may it not rest in those who operate these machines of pleasure and usefulness on our public thoroughfares? The ever-increasing casualties are all out of proportion to the increasing number of automobiles used. Are we not thus driven to conclude that, when such insurance is arranged for, the feeling of liability, as well as responsibility, on the part of the individual insured is lessened, and that thereby recklessness or lack of ordinary care is bred, rather than ordinary care held *in statu quo* or greater care promoted? Should not such question be one for the jury or court trying the case as any other fact submitted for consideration, not as a question of intent on the part of the party causing the claimed injury, but as such fact may bear on the question of his care or lack of care or negligence in the particular case?

It follows that the judgment of the district court is reversed and remanded for further proceedings in conformity with this opinion.

REVERSED.

GOOD, J., dissenting.

For the reasons hereinafter set forth, I cannot concur in that part of the majority opinion which holds: "Where a plaintiff in a personal injury action seeks by appropriate interrogatories on the cross-examination to discover whether the defendant is indemnified from loss by an insurance company, it is error for the court to sustain an objection to interrogatories which tend to develop the fact on that question." It is true that this rule was previously announced in *Miller v. Central Taxi Co.*, 110 Neb. 306. In that case, however, no reason for the rule was given save that it was supposedly based on the holding of this court

in *Egner v. Curtis, Towle & Paine Co.*, 96 Neb. 18. In the latter case it was ruled that it is proper to inquire of the jurors, on their *voir dire*, if they are stockholders or otherwise interested in a company carrying insurance indemnifying defendant against loss from the accident or transaction out of which the action arose. This was on the theory that such information was necessary to enable plaintiff to prudently exercise his challenges. With that ruling I am in entire accord. The point decided, however, has no bearing on the question under consideration and is not authority for the rule announced in *Miller v. Central Taxi Co.*, *supra*. I do not wish to be understood as contending that it is in no case proper to bring before the jury evidence that defendant carries indemnity insurance. Cases may arise where such disclosure may be proper, for the purpose of showing the interest or bias of witnesses who may be stockholders, officers, agents or employees of the company carrying the indemnity insurance for defendant.

I have made a painstaking examination of the authorities upon the question and find that, where the precise question has been presented, a view, contrary to that expressed in the majority opinion, has been taken in practically every jurisdiction that has passed upon the question, save that of Nebraska. The courts of 27 of our sister states and the federal courts take a contrary view to that of the majority opinion. Among the decisions holding that it is error to permit the plaintiff, in an action for personal injuries, to offer evidence or make argument to the jury that the defendant in the action is protected by indemnity insurance are the following: *Standridge v. Martin*, 203 Ala. 486; *Steele-Smith Dry Goods Co. v. Blythe*, 208 Ala. 288; *Ex parte Woodward Iron Co.*, 212 Ala. 220; *Roche v. Llewellyn Iron Works Co.*, 140 Cal. 563; *Pierce v. United Gas & Electric Co.*, 161 Cal. 176; *Wilson v. St. Joe Boom Co.*, 34 Idaho, 253; *Mithen v. Jeffery*, 259 Ill. 372; *Ruwisch v. Knoebel*, 233 Ill. App. 526; *Martin v. Lilly*, 188 Ind. 139; *Ryan v. Trenkle*, 199 Ia. 636; *Danville Light, Power & Traction Co. v. Baldwin*, 178 Ky. 184; *Sawyer v. Arnold Shoe Co.*, 90 Me. 369;

Jessup v. Davis.

*Feins v. Ralby,* 245 Mass. 228; *Kerr v. National Fulton Brass Mfg. Co.,* 155 Mich. 191; *Grubaugh v. Murphy Co.,* 209 Mich. 551; *Gracz v. Anderson,* 104 Minn. 476; *Gore v. Brockman,* 138 Mo. App. 231; *Wilson v. Blair,* 65 Mont. 155; *Herrin, Lambert & Co. v. Daly,* 80 Miss. 340; *Sutton v. Bell,* 79 N. J. Law, 507; *Simpson v. Foundation Co.,* 201 N. Y. 479; *Akin v. Lee,* 206 N. Y. 20; *Starr v. Southern Cotton Oil Co.,* 165 N. Car. 587; *Stoskoff v. Wicklund,* 49 N. Dak. 708; *Jones v. Sinsheimer,* 107 Or. 491; *Curran v. Lorch,* 243 Pa. St. 247; *Duke v. Parker,* 125 S. Car. 442; *Prewitt-Spurr Mfg. Co. v. Woodall,* 115 Tenn. 605; *Lone Star Gas Co. v. Coates,* 241 S. W. (Tex. Civ. App.) 1111; *Levinski v. Cooper,* 142 S. W. (Tex. Civ. App.) 959; *Bianchi v. Millar,* 94 Vt. 378; *Westby v. Washington Brick, Lime & Mfg. Co.,* 40 Wash. 289; *Walters v. Appalachian Power Co.,* 75 W. Va. 676; *Chybowski v. Bucyrus Co.,* 127 Wis. 332; *Smith v. Yellow Cab Co.,* 173 Wis. 33; *Remmel v. Czaja,* 183 Wis. 503; *Stewart & Co. v..Newby,* 266 Fed. 287. I do not desire to be understood as expressing the view that the action of this court should be ruled by a majority of the holdings of other courts, unless and except where they are based upon sound reason.

What was the purpose sought to be attained in offering such evidence to the jury? I think that all know that the purpose of the offer was not to elucidate any issue involved, but for the effect that it might have on the jury in rendering a verdict for plaintiff. In fact, the plaintiff in this case does not contend otherwise. What useful purpose could be served in the introduction of such testimony? Was it pertinent to any issue in the case? To ascertain this, perhaps it is desirable to state the issues that were presented by the pleadings. They are: (1) Was defendant guilty of negligence that proximately caused the death of Mr. Jessup? (2) Was Jessup guilty of contributory negligence? (3) Were defendant and Jessup engaged in a joint enterprise so that the negligence of defendant, if any, should be imputed to Jessup? (4) The amount of plaintiff's recovery, if any.

Jessup v. Davis.

If defendant carried indemnity insurance, that fact would tend neither to prove nor to disprove any of the issues raised by the pleadings; nor would it throw any light on the question for the jury's consideration. The matter inquired about was collateral to and entirely outside of any issue presented by the pleadings. If the proffered evidence should have been received, then, would it not have been proper for the parties to disclose to the jury the amount of indemnity insurance carried by defendant, and to introduce in evidence his insurance contracts, so that the jury might know the exact extent, terms and conditions on which the defendant is indemnified? Would not the defendant be entitled to present to the jury any possible defense that might be made in an action by him against his insurer? Would it not be as pertinent for the jury to consider any possible defense that the insurance company might make in an action by the defendant? And, if the jury should consider such facts and should believe that any possible defense that the insurance company might attempt to make was untenable, and render a verdict accordingly, would such verdict be binding upon the insurance company? We think that no one would so contend. The defendant might be held liable because the jury believed that he was indemnified, when there might be a valid defense to an action brought by him against his insurer, and he might not be, in fact, indemnified. The verdict of the jury would in no wise be binding upon the insurance company. All this only the more clearly shows why any evidence, not pertinent to the real issues to be tried. should be excluded. In my view, the introduction of such evidence could serve no useful purpose and was likely to mislead the jury and divert their attention from the real issues in this case. This court and other courts generally condemn the admission of incompetent and irrelevant matters and condemn the submission to the jury of any issues not raised by the pleadings, because such evidence and such instructions tend to mislead and confuse the jury and are likely to lead to a wrong verdict.

In the majority opinion the terms of a supposed contract

Jessup v. Davis.

of insurance are set forth and commented upon at great length. I use the terms "supposed contract" because no policy of insurance, nor the terms of any policy, are contained in the record. I take it for granted that every one will concede that there is a large number of companies writing indemnity insurance, and that some of the companies write many different forms of indemnity insurance contracts. There may be contracts of indemnity insurance containing the terms and conditions set forth in the majority opinion, but there is not a scintilla of evidence in the record of such a contract.

It is suggested in the majority opinion that the insurance company is the real party defendant, at least to the extent of the insurance carried by the defendant. This is mere assumption, based upon nothing appearing in the record. It also assumes that defendant will be able to recover his loss in an action against his insurer. This is mere assumption again.

It is further suggested that the insurance company is responsible for the entire conduct of the defense and calls such witnesses as it pleases, and that the party calling the witnesses vouches for their veracity; that therefore the jury should know that the insurance company is the one who vouches for the veracity of the witnesses called. It is a new doctrine to me that the veracity of a witness should be determined by the person who calls him. It may sometimes happen that a person of poor reputation or standing for veracity and probity may call as a witness one of high character and probity. On the other hand, a party of high character and standing may, by the exigencies of the situation, be required to call as a witness one who is not of that character. In the latter case, is, then, the witness to be given faith and credit because a person of high standing calls him as a witness; or is a reputable witness of high character and probity to be given little credence because of the character of the person who calls him as a witness? Certainly, no such rule obtains. Besides, the majority opinion assumes that the insurance company, or

those who control its policies and actions, are not of high character and standing. Again, this is mere assumption, not based upon any fact disclosed by the record.

I respectfully submit that the trial court's ruling in sustaining the objection is right. I think the correct rule should be that, unless there are disclosed good reasons for offering such evidence, it should be excluded, and if it is brought to the attention of the jury they should be instructed as to the purpose for which it was admitted, and to consider it for that purpose alone.

ROSE and DAY, JJ., concur in this dissent.