MISSISSIPPI ICE & UTILITIES CO. v. PEARCE.

(Division A.   May 4, 1931.)

[134 So. 164.   No. 29361.]

W. Lee Guice, of Biloxi, and Watkins, Watkins & Eager, of Jackson, for appellant.

**Mize, Mize & Thompson,** of Gulfport, for appellee.

Argued orally by **W. L. Guice** and **W. H. Watkins,** for appellant, and by **S. C. Mize,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

On the 6th day of June, 1930, in the city of Biloxi, Miss Susan Pearce, the appellee, was injured while rid-

ing as a passenger in a taxicab operated by the Yellow Cab Company, her injuries having been received in, and due to, a collision between the taxicab in which she was a passenger and a truck of the appellant, Mississippi Ice & Utilities Company. She recovered a judgment for fifteen thousand dollars.

The evidence for the appellee was to the effect that the taxicab in which she was driving was going at a reasonable rate of speed along West Beach, approximately opposite the lighthouse, on a curve, and, while on the driver's right-hand side of the road and near the curb, the taxicab was violently struck by the ice truck of the appellant company, which was being driven around the curve on the same side of the street at a rapid rate of speed, and that the colliding of the two cars resulted in throwing the driver from the taxicab, and in painfully, if not seriously injuring Miss Pearce.

It was the contention of the appellant that the converse was true; that, while the driver of appellant's truck was driving on his right-hand side of the street, he was struck by the taxicab, and carried over to the right-hand side of the street. There was conflict as to the speed of the cars, and on the main issue, both of which were submitted to the jury, and resulted in a verdict for Miss Pearce. It is unnecessary for us to go into a detailed statement of the main facts in issue, as the jury found liability, and no point is made here thereon.

Two assignments of error are argued by the appellant, and we shall state such facts in connection with each as are necessary to an understanding thereof.

1. Appellant argues that ''it is reversible error to permit to be presented to the jury the inference that appellant carried insurance.'' This assignment is based upon the following occurrence in the course of the trial: The appellant introduced Dr. W. W. Eley, as a witness, and he testified that, while the appellee, Miss Pearce, was in the hospital, he called there to see her, having

been sent by the appellant company; that he told her that he was sent by the appellant company; that she consented to his examining her; and that he made an examination. At this point counsel for appellee asked permission to propound some questions relative to the competency of the evidence, and the following examination ensued:

"Q. You say you went there as the physician of the Ice Company? A. Yes sir.

"Q. And went there for the purpose of making an examination for the Ice Company? A. Yes sir.

"Q. Isn't it a fact that you went there as the representative of the Insurance Company? A. No sir.

"By counsel for defendant: Objected to. The witness having testified who he went for. He is intelligent. It is the rankest kind of prejudice, and I want to go fully into that question.

"By counsel for plaintiff: I ask that the jury retire. I think his testimony is incompetent."

After the jury had retired, counsel for appellee asked Dr. Eley if it were not a fact that the insurance company paid him for his visit to the appellee, and, if he had not received, or did not get, a voucher from the insurance company all of which questions he denied. He also denied making any report to the insurance company and emphatically denied that he told Miss Pearce that he came to her at the hospital as a representative of the insurance company. Counsel for the appellee told the court that his client, Miss Pearce, had informed him that Dr. Eley came as the representative of the insurance company, that she did not know he was coming until he came to the hospital, and said: "If he was the doctor of the insurance company as well as the physician of Miss Pearce, I don't know if I would object to his testimony or not, because I am entitled to show the interest the witness has in the outcome of the case, and I want to get the full facts before the court."

Counsel for the appellant, during the colloquy, renewed his objection to the questions asked before the jury with reference to the insurance company, and asked that a mistrial be ordered by the court, which was overruled by the court. Thereupon the physician testified before the jury that he was called in consultation with appellee's regular physician, and the court sustained appellee's objection to the witness on the ground presumably that the testimony of the physician was privileged. But, in the presence of the jury, after the court had declined to order a mistrial, counsel for the appellant asked the following questions:

"Do you represent an insurance company? A. No sir.

"Q. Who paid you for the examination? A. Mississippi Ice & Utilities Company.

"Q. Do you know of the Mississippi Ice & Utilities Company having any insurance in this matter or any other matter? A. No sir,"—and continued to interrogate the witness about liability insurance until counsel for the plaintiff, the appellee, offered to open that conflict or else object to the evidence.

It will be observed that the assignment of error is based upon the single question, "Is not it a fact that you went there as the representative of the insurance company?" propounded by counsel for the appellee to Dr. Eley, and to which he replied in the negative. Counsel for the appellant contends that this question carried to the jury an inference of liability insurance; in other words, apprised the jury of the fact that the defendant, or appellant, was protected by liability insurance, and that the question propounded by counsel for appellee was not warranted, and that it was an improper and highly prejudicial method of conveying to the jury the inference that liability of the appellant was covered by insurance, and that the insurance company indemnifying it was the real litigant. Counsel for the appellee replied to this con-

tention by the assertion that, under the authorities, it was perfectly proper for him to question and elicit from the physician, a witness, his interest in the proceeding.

Counsel for the appellee and the appellant likewise cite us to the case of Jessup v. Davis, 115 Neb. 1, 211 N. W. 190, 56 A. L. R. 1403, and both counsel quote copiously from the extended notes and splendid brief of the entire subject by the reporter of the American Law Reports. It will be noted that the question did not apply to indemnity from loss by an insurance company, and neither this court now, with the record before it, nor the doctor at that time, by any strained construction of the language, could have determined whether the question applied to accident insurance which might have been carried by the appellee, Miss Pearce, or to liability insurance. All of this is purely a matter of conjecture, as shown by this record. The holding of the Nebraska court in the case of Jessup v. Davis, supra, is that: "Where a plaintiff in a personal injury action seeks by appropriate interrogatories on the cross-examination to discover whether the defendant is indemnified from loss by an insurance company, it is error for the court to sustain an objection to interrogatories which tend to develop the fact on that question." In the majority opinion in this case, there is a very interesting discussion of the right of cross-examination, and also the real status of a liability insurance company as exemplified by the usual contract; likewise the dissenting opinion of Mr. Justice Good is interesting, in which he states that, after a painstaking examination of the authorities, the courts of twenty-seven states had expressed an opinion contrary to that announced by the majority opinion, and cites cases, among which is found the case of Herrin v. Daly, 80 Miss. 340, 31 So. 790, 791, 92 Am. St. Rep. 605.

In the Herrin case, supra, this court held that, on cross-examination by counsel for appellee of one of the defendants in the court below, this court held that it was re-

versible error to ask him if there was any one back of the firm who would satisfy the judgment if obtained; the court saying therein: "The court overruled an objection to this, and we think this action error. It could not conceivably throw any light on the issue, and could have no other tendency than to seduce a verdict on the ground that an insurance company, and not the defendants, would be affected." The court then held that it 'was also error for the plaintiff in the court below to read to the jury, in evidence, the written accident indemnity policy. This case has been adhered to in the case of Galtney v. Wood, 149 Miss. 56, 115 So. 117. The court, however, in that case held that reference to the insurance company was not reversible error.

In the notes to the case of Jessup v. Daly, supra, we find this admirable statement of the law by the reporter: "While the rule excluding any testimony or statement to the effect that the defendant in a personal-injury action is insured should be strictly adhered to and rigidly enforced, and the court should not tolerate evasion or circumvention of it by indirection, still, in applying it, regard must be had to the undoubted right of the plaintiff to cross-examine witnesses to show interest or bias, it was always the right of the party against whom a witness is called to show by cross-examination that he has an interest, direct or collateral, in the result of the trial, or has such a relation to the party that bias would naturally arise, and this right is not to be abridged or denied because incidentally facts may be developed that are irrelevant to the issue and prejudicial to the other parties, for the other party takes a chance when he calls the witness. The rule denying the right to show that defendant in a negligence case carries liability insurance is not intended to override the equally positive and salutary principle that a party has the right to cross-examine the witness produced by his adversary, touching every relation tending to show interest or bias,

if the insurance company chooses to come before the jury, and place its own witnesses upon the stand, the plaintiff should be permitted to ask them if they are not there for the insurance company, which has produced them, or connected with it, for the case cannot be honestly placed before the jury without disclosure of the relation which such witnesses sustain to that company.''

We think this statement is supported by the weight of authority, and that it is only necessary to refer generally to this quotation, rather than the cases supporting it, which are many. The only reference to a liability insurance company called forth in this case was by the questions of counsel for the appellee. The court below has found that the counsel for appellee acted in good faith in asking such questions, for he said that his client had told him that the doctor stated to her that he was the representative of an insurance company, and the questions asked after the jury was withdrawn tends to show that counsel was sincere in his belief that the witness for the defendant on the occasion of his visit to Miss Pearce, the appellee, was representing an insurance company; and, on cross-examination, it cannot be said that the cross-examiner is bound by the testimony of the witness on direct examination. Many a splendid tower of Babel, erected by the examination of a witness in chief, has been wrecked by the sensible, shrewd, and skillful cross-examination of a skilled lawyer who knows when, how, and where to cross-examine the adversary witness. Cross-examination is a means of ascertaining the truth, and, when sensibly and skillfully used, is of great aid to the courts in this country. It is to sift the testimony of the adverse witness and to put to test his integrity. On the other hand, a cross-examination conducted by one unskillful, uninformed, and without purpose, is a bore and a nuisance; the records are piled up and many cases 'lost because of silly, unwise, unskillful, and purposeless multiplication of words in ''so-called cross-examinations.''

We think we cannot now declare that counsel for appellee acted in this behalf unethically and unfaithfully, and agree with the lower court. If counsel believed, as he stated he did, that the statement of his client to him was true, and if he could elicit from the physician the statement that he was, in fact, representing an insurance company, he might conclude that he could rely on the evidence of the physician without objecting and excluding it, because of the privilege existing between the physician and patient. We think the court was warranted in overruling the objection and in declining to withdraw the case from the jury and order a mistrial. No honorable lawyer who has any conception of his duty to the court, as well as to his client, will undertake to thwart and pervert justice by seeking to elicit irrelevant and prejudicial matter in order that the verdict may be rendered upon injustice, prejudice, and a false issue. If counsel, in good faith, on cross-examination, seeks to elicit the interest, bias, or prejudice of a witness by a proper question, he will not be precluded from doing so simply because the answer may reveal that a liability insurance company is interested. No witness, offered by either side, be he prince, potentate, physician, judge, or private citizen, is exempt from the right of fair cross-examination in this state. Section 1532, Code 1930, provides that any witness may be examined touching his interest in the cause. We cannot agree with the counsel for appellant that this cross-examination unduly influenced the jury in this case, as we must assume that the jurors were "qualified persons of good intelligence, sound judgment, and fair character."

2. It is next contended that the verdict of fifteen thousand dollars is grossly excessive—so excessive as to evince prejudice and bias on the part of the jury. As on the other question, counsel in this case have been very diligent in citing authorities on the amount of dam-

ages. But it must be remembered that it is not the amount of the verdict that would be rendered by the judges who are reviewing the case. The dominant question always is whether or not the verdict is so large and so out of proportion as to evince passion and prejudice on the part of the jury to a reasonable mind.

This lady was twenty-eight years of age, earned seventy-five dollars per month in her work of selling, delivering, and hanging pictures of art, which employment necessitated the climbing of ladders, and driving a car in connection with her occupation, which labor, at the time of the trial, she was unable to perform. She was injured at Biloxi, and was treated in the hospital there. An X-ray made of the injured area showed negative, or that there were no broken bones. After a few days, she returned to her home at Shreveport, Louisiana. When leaving the hospital, she had to use crutches, was assisted on the train, and was carried in a wheel chair from one depot to another in New Orleans, where she had to change trains. Upon her return home, she was examined by Dr. Caldwell, a specialist in orthopedic surgery, or disease of the bones and joints. His diagnosis of her case was that she was suffering from a dislocation and an acute, strain of the left sacroiliac joint; and it was his opinion that she was suffering pain—that upon pressing the affected part there would follow an involuntary tightness and cording of the back and hip muscles. He prescribed for her a special support for the hips and lower back in the nature of a girdle, light heat treatments, followed by massage daily. It was his opinion that the injury was of a permanent nature. To use his own language: ''The injury is of a permanent nature, because experience has shown, that severe injuries of the sacroiliac joint, in which abnormal motion in the joint can be demonstrated, such as seen in Miss Pearce's case, seldom entirely recover their normal strength, but remain thereafter seriously weakened and

painful.'' He further stated that climbing a ladder, stooping and lifting pictures, and driving an automobile would result in a strain on the affected and injured point, and would reproduce, in some measure, the original strained condition, thereby causing pain.

Dr. Douglas, one of the attending physicians at Shreveport, Louisiana, testified that in his opinion there was an abnormal condition around the sacroiliac joint, and that she would require nursing for a year from the period of the trial, and that, under favorable conditions, she would never be more than fifty per cent efficient. The appellee's testimony was to the effect that she suffered intense pain with her back; that she had to take drugs to induce sleep because of pain therefrom; that, while she was better at the date of the trial, which was within six months of the injury, she continued to suffer intense pain, was suffering while she was on the witness stand, and all the time prior thereto. She also stated that she had paid in excess of nine hundred dollars for physicians, nurses, and hospital bills, that she had discharged the trained nurse, and now had a cheaper nurse at fourteen dollars a week, whom she would continue to employ at that rate of pay for the following year. She was still under the treatment of her physicians at the time of the trial. She received other slight injuries—the ''tip of her nose was almost severed''—but all the other injuries on her body and also her nose had healed. She stated that her health had been good prior to her injury, but admitted that several years before she had had an operation for appendicitis and was in the hospital ten days therefrom, that afterwards she returned to the hospital for adhesions, and also had her tonsils removed, and that she slept perfectly before this injury occurred, but that since she had been in constant agony. The extent of her suffering and of her injury is not disputed in this record. Under these circumstances, we cannot say that

fifteen thousand dollars is so excessive as to indicate that the jury evinced prejudice and bias in rendering the verdict.

Affirmed.