WILLIAMS *v.* LARKIN.

(Division B. April 10, 1933. Suggestion of Error Overruled May 12, 1933.)

[147 So. 337. No. 30524.]

Dunn & Snow, of Meridian, for appellant.

Reily & Parker, of Meridian, for appellee..

Argued orally by **E. L. Snow**, for appellant, and by **Marion Reily**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee was walking on Twenty-Fifth street in the city of Meridian at a place where he had a right to be. Appellant's car, unoccupied, ran against him and injured him. Appellee sued appellant for damages for the injury, basing his right to recover upon the allegation that the car was running wild through the negligence of appellant. There was a verdict and judment in the sum of three thousand five hundred dollars, from which judgment appellant prosecutes this appeal.

The streets in the city of Meridian run east and west and the avenues north and south. Appellant's home is located on the north side of Twenty-Fifth street between Twenty-Seventh and Twenty-Eighth avenues. There is a decline in the street from the front of appellant's home west some distance. Appellant parked her Ford automobile in front of her home facing west. Shortly after it was parked, probably within fifteen minutes, it had run west down Twenty-Fifth street something like two blocks and had struck and injured appellee. Appellee's contention was that appellant negligently failed to properly scotch the car, resulting in its running down the street of its own momentum. Appellant's defense was that the car was properly scotched, and that it went wild as a result of the act of some intermeddler, and that the facts to establish this defense were undisputed, and therefore she was entitled to a directed verdict.

The evidence bearing on this question stated most strongly in appellant's favor was substantially as follows: Appellant testified that her home was located on the north side of Twenty-Fifth street between Twenty-Seventh and Twenty-Eighth avenues in the city of Meridian. That she had lived there seven or eight years.

That Twenty-Fifth street is paved and declines from east to west. That there is a school known as Marion Park School, attended by small children, on the south side of Twenty-Fifth street between Twenty-Eighth and Twenty-Ninth avenues. That on the day of appellee's injury she had driven her husband downtown to his work early in the morning. That about ten o'clock in the morning she had driven by the home of a friend, Mrs. Paul Vass. That there Mrs. Vass with her seventeen-months-old baby got in the car with her. That after driving around for the benefit of the baby, who had recently been burned about the face and arms, they came back to her home. That Mrs. Vass spent the day with her. That they had lunch and afterwards took the baby, drove around awhile, and then returned home. That later they made another trip and returned home. That they then went to the hospital for the purpose of having the Vass baby examined by the doctor. That on the return trip from the hospital she drove by an ice station on Twenty-Sixth avenue and purchased a lump of ice which was placed on the rear bumper of the car. That from there she drove directly to her home and parked the automobile in front of the house. That in parking, the car was placed on the north side of Twenty-Fifth street, facing west, with the right front wheel cut against the curb, and the gear in reverse. That the right front wheel was cut against the curb and the lever put in reverse to keep the car from rolling down the street west. That so parked, if the engine had been started the car would have gone backward instead of forward. That after so parking, Mrs. Vass, who was sitting on the front seat on the right side, opened the right front door of the car, handed the baby who was on a pillow to appellant to hold, and got out of the car. That appellant then moved from the left side of the front seat to the right side and handed Mrs. Vass the baby. That Mrs. Vass, when she took the baby, was standing between the curb and the running board of the car. That

at the time the right front wheel of the car was resting against the curb on the north side of Twenty-Fifth street, and the rear end of the car was out toward the center of the street with the right rear wheel about two or three feet from the curb. That the car was standing still when they got out. That when they left the car the lever remained in reverse. That on this car, when the gear is in reverse the lever used to manipulate the gear is as far toward the front or cowl of the car as it can be and is out of the way of a person moving from the steering wheel over to the right side of the car. That both of them with the baby went into appellant's home, and as they went in she called her servant, a negro, Lizzie Nelson, and instructed her to go to the car and bring the ice in and place it in the ice box. That she heard the servant go to the ice box and shift food and articles therein so as to make a place for the ice, after which she went out for the ice, brought it in, and put it in the box. That this occurred probably within five minutes after they had gone into the house. That some ten or fifteen minutes thereafter she was informed that her car had struck appellee. That she immediately went to the scene, found the car in neutral, and drove it back home. That the injury occurred about one forty-five in the afternoon, and at that time and for some time before and thereafter the children attending the Marion Park School were coming out of the school, and a considerable number of them passed around and near where appellant's car was standing. However, there was no evidence tending to show that any of them touched the car.

Mrs. Vass corroborated the testimony of appellant in all substantial respects. The servant, Lizzie Nelson, testified that she got the ice off the rear bumper of the car and left the car standing still; that she did not touch it except simply to raise the ice from the rear bumper.

The evidence showed without dispute that the mechanical condition of the car was good and that parked in re-

verse at the place where it was, it was impossible for it to run down the incline unless some intermeddler had interfered with the manner of its parking. Putting the case in still another way, the evidence demonstrated beyond any question that either appellant and Mrs. Vass were mistaken as to how the car was parked or some other person had wrongfully interfered with its manner of parking so as to cause it to run wild.

Appellant's contention is that this was not a jury question because her testimony, and that of Mrs. Vass, and of the negro servant, was undisputed. The authorities principally relied on by both appellant and appellee are from other states. We do not find any of them very helpful as applied to the particular facts of this case. There is no decision of our court in point. Appellant relies on the principle, which appellee concedes to be sound, that there could be no recovery unless appellant negligently parked the car. Appellant contends that the evidence was undisputed, that she was guilty of no negligence, and therefore she was entitled to a directed verdict; while appellee contends that the question of negligence was one for the jury, that appellant and Mrs. Vass may have been mistaken as to how the car was parked. The proven facts speak in unmistakable terms one of two things, namely, either appellant negligently parked the car, or some intermeddler wrongfully so changed its manner of parking that it ran wild. There was no eye witness to such intermeddling.

The evidence shows that the appellant was in the habit of driving her car. The court knows, as everybody does, that to a person in the habit of driving a car the use of the starter, the lever, including the shifting into the different gears, the foot brake, the emergency brake, the clutch, and the accelerator, becomes to a large extent subconscious action—mechanical. The probability is that appellant was in the habit of parking her car in reverse with the right front wheel cut against the curb. On the

particular occasion in question, however, the conditions were evidently unusual. Appellant was at the wheel driving the car. Her friend, Mrs. Vass, was on her right with her afflicted baby lying in her lap on a pillow. In order to get out conveniently, Mrs. Vass handed the child to appellant. Mrs. Vass then got out and stood between the curb and running board of the car. Appellant then handed the child to Mrs. Vass, moved to the right of the steering wheel, and got out of the car. These were unusual conditions, and might have interfered with appellant's customary manner of parking the car; they might have diverted her mind from its customary course. She might reasonably have left undone what ordinarily she would have done consciously or subconsciously. Although there is nothing in the record to indicate that either appellant or Mrs. Vass consciously gave false testimony, still there is enough, taking in all the surrounding facts and circumstances, to make it a question for the jury whether or not they were honestly mistaken as to the manner of parking the car. Although it is a close question, we are of opinion that the issue of negligence was one for the jury and not for the court.

Appellant assigns and argues as error the giving of the following instruction for appellee: "The court charges the jury for the plaintiff: That if you find from a preponderance of the evidence in this case, that the striking of the plaintiff by defendant's automobile, was proximately caused by the negligence or wrongful act of any person, then said striking was not a simple accident, as used in these instructions." Appellant's criticism of the instruction is that it informed the jury that if any person was guilty of negligence proximately causing appellee's injury the appellant would be liable. We do not think the criticism well founded. By this instruction the court simply said to the jury that if appellee's injuries were proximately caused by the negligence of "any person," then such injuries were not the result of a simple ac-

cident. It appears clear that the instruction embodied the correct principle of law. Appellant further criticizes the instruction on the ground that there were no other instructions given defining an accident. We are unable to see how that fact was calculated to mislead the jury.

Appellant assigns and argues as error the ruling of the court in admitting certain testimony given by Dr. Bryan, a witness for appellee. Dr. Bryan had an interest in and belonged to the medical staff of the Meridian Sanitarium. After appellee's injury he was taken to that institution and treated by Dr. Bryan. After testifying to those facts and others not pertinent to this question, Dr. Bryan was asked on cross-examination several questions evidently for the purpose of showing that appellant was indemnified against loss on account of the injury done appellee by a policy of insurance with the Employers' Liability Assurance Corporation, Limited. The most of these questions were put to the witness in the absence of the jury. He testified that the sanitarium had a contract with that insurance company, and that the husband of appellant was the agent of the company. As we understand the record, all his testimony was ruled out except that the witness had an interest in the hospital and that the hospital had a contract with the insurance company. To sustain her contention appellant relies on the principle laid down in Herrin, Lambert & Co. v. Daly, 80 Miss. 340, 31 So. 790, 791, 92 Am. St. Rep. 605. The court held in that case that in the trial of an action by a servant against his master for personal injuries received in defendant's service, it was error to admit evidence that the master was indemnified by an insurance company from loss in case of recovery. The court said in that case: "It could not conceivably throw any light on the issue, and could have no other tendency than to seduce a verdict on the ground that an insurance company, and not the defendants, would be affected." Appellee contends that there was no such purpose in view in the cross-examina-

tion of Dr. Bryan; that the sole purpose was to show that he was biased in appellant's favor, as he had a right to do under the authority of Mississippi Ice & Utilities Co. v. Pearce, 161 Miss. 252, 134 So. 164.

Manifestly appellee's cross-examination of the witness along this line was improper, but as above stated, most of it took place in the absence of the jury. As above stated, about all the court permitted to go to the jury was that Dr. Bryan had an interest in the hospital, and the hospital had a contract of some character with the insurance company. It was not shown that appellant had a policy with the insurance company indemnifying her against any judgment appellee might recover; therefore we cannot say, with any degree of certainty, that what occurred was calculated to bring an element into the case that the jury had no right to consider.

Affirmed.