JONES, Justice.
This case was an action for damages because of injuries received by appellee, Turnipseed, in a collision between his car and a truck belonging to Farmers Supply Cooperative and driven by Skelton, in an intersection outside the city of Greenwood.
The case was tried twice in the Circuit Court of Leflore County. The first trial ended with a verdict for the defendants. The circuit judge set aside that verdict and granted a new trial, on which new trial appellee received a verdict and judgment for $35,000, from which this appeal is taken.
Outside the city of Greenwood, there is a subdivision. One street runs east and west and is named Basket Street; another runs north and south and is called Second Avenue. It was in the intersection of these streets that the accident occurred. Appellee was traveling south on Second Avenue. Skelton was traveling west on Basket Street.
The evidence is practically without dispute that appellee entered the intersection first and that the truck driven by Skelton struck his car in the side and knocked it into or near the southwest corner of the intersection. No question is presented as to the amount of the verdict.
The defendants pled that appellee did not stop at a stop sign on the north of Basket Street. Appellee, the plaintiff below, pled that there was no stop sign at said site at the time of the accident and none had been lawfully placed there.
There was no testimony in either trial that the board of supervisors had designated Basket Street as a through street and had authorized the placing of stop signs on Second Avenue. The evidence showed, however, that, while there had been a stop sign on the north side of Basket Street facing traffic proceeding south on Second Avenue for several months the sign had not been there. After the accident, it was found in the ditch on the west side of Second Avenue.
On the first trial, defendant was given the following instruction:
The Court instructs the Jury for the defendants, that the defendant, J. L. Skelton, had a right to assume that the street upon which he was driving was reasonably safe to drive upon with his truck and if the Jury believes from a preponderance of the evidence that he had been operating his vehicle on said street for a number of years knowing that there was a stop sign located on Second Avenue North requiring traffic to stop before entering Basket Street and that it was the habit and custom' known to defendant, J. L. Skelton, to rely upon the existence of such stop signs, then, and in that event, it did not constitute negligence on the part of J. L. Skelton to operate his truck in such usual and customary manner and he was not required to use extraordinary care in approaching the intersection of Second Avenue North and Basket Street.
Appellee filed a motion to set aside the verdict and grant him a new trial on the grounds that the verdict was against the weight of the evidence and the instruction above quoted was erroneous. The judge sustained said motion, and we think rightfully so. There was practically no dispute that the appellee had entered the intersection first and that his car was struck in the side by the truck driven by Skelton as the employee of Farmers Supply Corporation. In addition, the instruction above quoted was erroneous in many respects and could only have been harmful.
On the second trial, the evidence was practically the same as on the first trial. On the first trial, the appellant, Skelton, had admitted that appellee was first in the intersection. On the second trial, his testimony was that he did not know or could not say which entered the intersection first; that they entered about the same time.
*696 One of the main arguments is that it was brought to the attention of the jury that the defendants had liability insurance. That came about in this way: Appellee, Turnipseed, had testified that as he approached the intersection, he waved to a newsboy, and that before he entered the intersection, he looked east and west and saw no car or cars approaching. That he did not see the truck of appellants until he had entered into the intersection. Further, that he remembered nothing after the collision. The appellants introduced a statement signed by appellee. This written statement conflicted with the testimony given by the appellee in that in the written statement it was said that appellee did not remember anything after he spoke to the newsboy about one-half block north of Basket Street. Appellee denied he had told the man who took the statement that he did not remember anything after seeing the paper boy, but insisted that he told him he did not remember anything after the truck hit him. The plaintiff testified further: that he signed the statement but did not read it; that said statement was written by J. M. Strong, the man who witnessed it; that Mr. Strong came to his house while he was in bed and he told Mr. Strong the same thing that he testified; that he did not tell Mr. Strong the last thing he remembered was waving to the little boy but told him the last thing he remembered was being hit by the truck; that after he answered Mr. Strong’s questions, Mr. Strong wrote the statement and he, appellee, signed it without reading it. There was a direct conflict between the appellee’s testimony and the statement that he had signed.
Later, Mr. Strong was placed on the witness stand by the defendants. He testified that the statement was in his handwriting. He went to the plaintiff’s home and asked questions about the accident and wrote out the statement from these answers. Thereupon, on cross-examination by appellee’s attorney, he was asked:
Q. What was your interest and reason for seeing Mr. Turnipseed on this occasion and writing out this statement and getting him to sign it ?
A. I represented the insurance company of Butane Gas Company.
Q. You were out there in behalf of that liability insurance company?
A. That is right.
He was further asked:
Q. But, the company you were working for, it was to their interest that this accident be found to be due to the negligence of Mr. Turnipseed and not due to any negligence on the part of Mr. Skelton?
A. Well, that’s true.
Q. The company that had employed your firm to do this had a monetary interest in the outcome and decision of that question of negligence ?
A. Yes.
Q. That is because if the court and jury should find the defendants Skelton and Butane Gas Company liable for this accident, and guilty of negligence, the company on whose behalf you were acting would have to pay, is that no so ?.
A. That is right.
Appellants have argued strenuously that this evidence was erroneously admitted and cite those cases in Mississippi holding that a statement regarding liability insurance was error and irrelevant and incompetent under the circumstances in those cases. Here we have a different situation from the ones in the cases relied upon by appellant. In this case, we have a witness undertaking directly to contradict appellee by the introduction of a statement admittedly written by him and which the appellee denied was what he told the witness, and that he relied upon the witness in preparing *697 the statement in accordance with the information he had given and had not read the statement when he signed it.
Section 1693, Mississippi Code of 1942 Annotated (1956) provides:
Any witness may be examined touching his interest in the cause * * * and his answers may be contradicted, and his in7 terest * * * established by other evidence; * * *.
In Mississippi Ice & Utilities Co. v. Pearce, 161 Miss. 252, 134 So. 164 (1931), this Court quoted with approval from the notes of Jessup v. Davis, 115 Neb. 1, 211 N.W. 190, 56 A.L.R. 1403 (1926) the following:
“While the rule excluding any testimony or statement to the effect that the defendant in a personal-injury action is insured should be strictly adhered to and rigidly enforced, and the court should not tolerate evasion or circumvention of it by indirection, still, in applying it, regard must be had to the undoubted right of the plaintiff to cross-examine witnesses to show interest or bias, it was always the right of the party against whom a witness is called to show by cross-examination that he has an interest, direct or collateral, in the result of the trial, or has such a relation to the party that bias would naturally arise, and this right is not to be abridged or denied because incidentally facts may be developed that are irrelevant to the issue and prejudicial to the other parties, for the other party takes a chance when he calls the witness. The rule denying the right to show that defendant in a negligence case carries liability insurance is not intended to override the equally positive and salutary principle that a party has the right to cross-examine the witness produced by his adversary, touching every relation tending to show interest or bias, if the insurance company chooses to come before the jury, and place its own witnesses upon the stand, the plaintiff should be permitted to ask them if they are not .there for the insurance company, which has produced them, or connected with it, for the case cannot be honestly placed before the jury without disclosure of the relation which such witnesses sustain to that company.” (161 Miss, at 262-63, 134 So. at 166).
After such quotation, our Court said:
We think this statement is supported by the weight of authority, and that it is only necessary to refer generally to this quotation, rather than the cases supporting it, which are many. (161 Miss, at 263, 134 So. at 167).
This Court further found:
If counsel, in good faith, on cross-examination, seeks to elicit the interest, bias, or prejudice of a witness by a proper question, he will not be precluded from doing so simply because the answer may reveal that a liability insurance company is interested. No witness, offered by either side, be he prince, potentate, physician, judge, or private citizen, is exempt from the right of fair cross-examination in this state. (161 Miss, at 264, 134 So. at 167).
See also Vicksburg Ice Co. v. Delta Ice Co., 119 So. 824 (Miss.1929) and Whatley v. Boolas, 180 Miss. 372, 177 So. 1 (1937), where the utilities company case was referred to with approval. We find no error in this cross-examination of the witness to show his interest, bias or prejudice in the matter. See also 56 A.L.R. 1439 (1928); 29 Am.Jur.2d Evidence § 405 page 460 (1967); 4 A.L.R.2d 775 (1949).
Much attention is given to the fact that there had been placed on the north side of Basket Street a “stop” sign for traffic traveling south on Second Avenue. Although it is undisputed that the stop sign was down and not in place at the time of this accident, it is argued that the requirement to stop was still in force.
No effort was made to show that any public authority had designated Basket *698 Street as a through highway and had directed the placing of stop signs on Second Avenue.
Section 170 of our Constitution provides that supervisors shall have full jurisdiction over roads subject to the provisions therein contained. Sections 2890, 8150, and 8151, Mississippi Code 1942 Annotated (1956) were enacted in accord with said Constitution Section and designate, among other powers, that local authorities may adopt traffic regulations not in conflict with the act, and may designate through highways and require traffic to stop before entering same, with signs giving notice thereof to be posted.
The place of this accident, being outside the city, was subject to control by the board of supervisors.
As heretofore stated, defendants had pled as an affirmative defense the existence of a stop sign requiring appellee to stop. Ap-pellee had replied with a denial of an existence of a stop sign and with a denial of the legality thereof.
Under this situation, the parties expecting to rely upon a violation of any claimed restrictions placed in effect by the local authorities shall have the burden of proving same. Niles v. Sanders, 218 So.2d 428 (Miss.1969). In that case, there are also authorities cited showing that in the absence of ordinances by the local authorities, the state law applies.
Of course, it requires no citation of authorities to know that a body such as the board of supervisors can speak only through its minutes. As heretofore stated, no effort was made to prove any such action by the board and the state law applied regardless of the fact that some one had at sometime placed a stop sign at this intersection, which sign was not there at the time of this accident.
Objection is made to a number of instructions given the plaintiff or of others refused defendants.
We have examined the instructions and are unable to find any reversible error therein. Accordingly, the case is affirmed.
Affirmed.
GILLESPIE, P. J., and RODGERS, BRADY, and SMITH, JJ., concur.