CHANDLER, J.,
for the Court.
¶ 1. Harrison Montgomery, Jr. was involved in an automobile accident in which he ran a red light and fled the scene of the accident. The victim of the accident eventually died from the injuries he sustained. The Circuit Court of Tunica County convicted Montgomery of manslaughter. Miss.Code Ann. § 97-3^7 (Rev.2000). Montgomery appeals, raising the following issues:
I. WHETHER THE COURT ERRED IN ALLOWING EVIDENCE THAT MONTGOMERY RAN A RED LIGHT AT THE TIME OF THE ACCIDENT
II. WHETHER THE COURT ERRED IN DENYING MONTGOMERY’S MOTION FOR A DIRECTED VERDICT AND WHETHER THE VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 2. Finding no error, we affirm.

FACTS

¶ 3. On October 21, 2001, Thomas and Gartha Roger spent the evening at Sam’s Town Casino in Robinsonville. As they were leaving, they came to a traffic light on Sam’s Town Drive at the intersection of Casino Drive and Sam’s Town Drive. The light turned green, and Mr. Roger drove his van into the intersection. Harrison Montgomery, Jr., who was traveling on Casino Drive, ran the red light and collided with the Rogers’s van. The two vehicles came to rest within the intersection, and there were no skid marks made by either vehicle prior to the collision. Mr. Roger was taken by helicopter to a hospi *1171 tal in Memphis, and he died from the injuries he sustained from the accident four days later.
¶ 4. Dennis Scarborough was an eyewitness who observed the collision. Scarborough was traveling eastbound on Casino Drive. When the traffic light in front of Sam’s Town changed to yellow, he slowed down. Scarborough observed that the light on the other side of the intersection “hesitates just a hair before it changes green.” A few seconds after Scarborough had stopped, he saw Montgomery’s car traveling westbound. The car ran the red light and struck Mr. Roger’s van. When Montgomery’s car struck Mr. Roger’s van, the van spun in a circle. Although the State was unable to determine the exact rate of speed at which Montgomery’s car was driving, Scarborough testified that Montgomery was driving fast when he ran the light, and Montgomery’s car did not brake before he hit the van. Scarborough, who is a retired police officer, testified that he was reasonably certain that Montgomery was traveling at a speed in excess of thirty-five miles per hour.
¶ 5. After Scarborough witnessed the accident, he got out of his car and went to check on Mr. and Mrs. Roger. He testified that Mr. Roger was “obviously in severe pain. He was yelling and screaming. ... It looked like the door had driven into him, kind of twisted him in the seat into the console.” He described Mrs. Roger as being in a daze.
¶ 6. After checking on Mr. and Mrs. Roger, Scarborough went to check on Montgomery. He asked Montgomery if he was hurt, and Montgomery said he was all right. At that time, Sam’s Town Security arrived, and Scarborough told the officer to get medical help. Scarborough then saw Montgomery start walking towards the casino. When Scarborough told Montgomery that he should stay at the scene of the accident, Montgomery “took off running.” At trial, Scarborough positively identified Montgomery as the person driving the car that collided with Mr. Roger’s van. When the Tunica County Sheriffs Department arrived, Scarborough saw the police officers and the security guard from Sam’s Town chasing the person who fled the scene of the accident.
¶ 7. Tad Walker was also an eyewitness to the accident. He stopped at the red light on Sam’s Town Drive immediately behind Mr. Rogers’ van. After the light turned green, he saw Mr. Roger’s van entering the intersection, where “all at once, [a] car, it seemed like out of nowhere, come [sic] up and hit the van on the side.” Walker also got out of his car to check on the occupants of the van and car. He observed Mr. Roger leaning over and moaning in pain. When he turned around to check on Montgomery, he saw that Montgomery left the scene of the accident and was walking towards the casino.
¶ 8. Officer Earnest Bradly of the Tuni-ca Sheriffs Office responded to the accident. Officer Bradly and Sam’s Town Security eventually found Montgomery hiding under a car in the Sam’s Town parking lot. They had to pull him from underneath the car because he refused to come out voluntarily. The officers detained him at that time. Officer Bradly was able to get a good look at the man who was hiding under the car, and he positively identified Montgomery as that person. Officer Bradly testified that Mr. Roger was in critical condition immediately after the accident. On this evidence, the jury convicted Montgomery of manslaughter.

ANALYSIS

I. WHETHER THE COURT ERRED IN ALLOWING EVIDENCE THAT *1172 MONTGOMERY RAN A RED LIGHT AT THE TIME OF THE ACCIDENT
¶ 9. When Tad Walker testified at trial, he stated, over the objection of Montgomery’s attorney, that he was stopped at a red light. Dennis Scarborough and Mrs. Roger also testified that Montgomery ran a red light. On appeal, Montgomery argues that the admission of such evidence is reversible error, claiming that the ordinance authorizing a traffic control device must be introduced as evidence before a witness can testify as to its existence.
¶ 10. Montgomery relies upon McDaniel v. City of Grenada, 252 Miss. 16, 172 So.2d 223 (1965). In that case, the defendant was charged and convicted of violating a no parking ordinance. The proposed ordinance, which apparently was never legally adopted by the City, was introduced into evidence over the objection of the defendant. The ordinance admitted was not certified by the city clerk, as required by Mississippi Code Annotated Section 3374-77 (1956). The supreme court reversed the trial court and dismissed the charge, because there was no ordinance legally in evidence to sustain the charge. In the case sub judice, when the trial judge overruled Montgomery’s objection, he recognized the necessity of requiring the State to prove the lawful existence of a traffic signal when a defendant is convicted of a traffic offense. For this reason, the case sub judice is distinguishable from McDaniel, because Montgomery was not charged with violating a traffic ordinance, and the violation of a traffic ordinance was not an element the State needed to prove in order to establish a manslaughter conviction.
¶ 11. Montgomery also relies upon Skelton v. Turnipseed, 235 So.2d 694 (Miss.1970). In that case, the plaintiff sued for injuries he sustained from a collision between his car and the truck driven by the defendant. At the intersection of the accident, there had been a stop sign. The stop sign was down at the time of the accident, and the defendants pleaded as an affirmative defense the existence of a stop sign that required the plaintiff to stop. However, the defendants did not produce evidence showing that the stop sign existed at one point in time. The court established the following rule:
Defendants had pled as an affirmative defense the existence of a stop sign requiring an appellee to stop. Appellee had replied with a denial of an existence of a stop sign and with a denial of the legitimacy thereof. Under this situation, the parties expecting to rely upon a violation of any claimed restrictions placed in effect by the local authorities shall have the burden of proving same.
Id. at 698. The case sub judice is distinguishable from Skelton. Montgomery did not plead that the traffic light was unauthorized, and he gave no notice that he intended to challenge the legitimacy of any highway signs until his attorney made the objection at trial.
¶ 12. Finally, Montgomery relies on Niles v. Sanders, 218 So.2d 428, 430 (Miss.1969), a ease in which the supreme court reversed and remanded when the trial court allowed the plaintiff to introduce testimony indicating that the official speed limit at the place of the accident was forty miles per hour. The defendant objected, based upon failure of the plaintiff either to allege or to offer proof of any action on the part of the Hinds County Board of Supervisors reducing the statutory statewide speed limit of sixty-five miles per hour to forty miles per hour at the point in question or authorizing the posting of the sign. Id. at 430. The supreme court stated:
If the existence of such a special speed restriction is alleged and denied, or if its legality is put in issue by a responsive *1173 pleading, proof should then be required, the burden resting upon the party having the affirmative, as in other eases of disputed fact. Where the existence of the speed zone and rate of speed are properly alleged and not denied, proof that speed signs were in fact posted is sufficient to create a presumption that they reflect appropriate action by competent authority in restricting speed.
Id. at 431.
¶ 13. In the case sub judice, Montgomery does not question the legality of the traffic light. Instead, he is arguing that a party that introduces evidence of the existence of a local traffic control device must always introduce the ordinance authorizing its placement. Contrary to Montgomery’s argument, our courts have never established a rule requiring such proof when the legality of the traffic sign is not questioned, and we decline to establish such a rule. As the district attorney remarked, “[W]itnesses can testify to what they observe. They always have been able to testify. And the judicial economy, it would just slow the system down to a halt if every defendant who got up was ever to say, well, we don’t, we take exception to the testimony about red lights.” This issue is without merit.
II. WHETHER THE COURT ERRED IN DENYING MONTGOMERY’S MOTION FOR A DIRECTED VERDICT AND WHETHER THE VERDICT WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 14. The State was required to prove each element of the crime of manslaughter under Mississippi Code Annotated Section 97-3-47 (Rev.2000). That section provides, “Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of the law, not provided for in this title, shall be guilty of manslaughter.”
¶ 15. The sufficiency of the State’s evidence may be tested by a motion for a directed verdict, a request for a peremptory instruction, and a motion for a judgment notwithstanding the verdict. The standard of review for each is the same. “[T]he trial court must consider all of the evidence which supports the State’s case in a light most favorable to the State. The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence.” Butler v. State, 544 So.2d 816, 819 (Miss.1989) (citing Glass v. State, 278 So.2d 384, 386 (Miss.1973)). If the evidence is sufficient to convince a rational trier of fact of guilt beyond a reasonable doubt, the jury verdict must be affirmed. Ballenger v. State, 667 So.2d 1242, 1252-53 (Miss.1995).
¶ 16. Montgomery admits that he ran a red light and fled the scene of the accident. While he admits that such actions constitute simple negligence, he argues that such actions do not constitute culpable negligence, which is required to sustain a conviction for manslaughter. The Mississippi Supreme Court has defined culpable negligence as “the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the willful creation of an unreasonable risk thereof.” Smith v. State, 197 Miss. 802, 817, 20 So.2d 701, 705 (1945). The court also stated:
[T]he term culpable negligence should be construed to mean a negligence of a higher degree than that which in civil cases is held to be gross negligence, and must be a negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and that this shall *1174 be so clearly evidenced as to place it beyond every reasonable doubt.
Id. at 818-19, 20 So.2d at 706.
¶ 17. In the case sub judice, the jury heard evidence that Montgomery was driving at a high rate of speed, ran through a red light, and hit Mr. Roger’s van without applying his brakes. The jury also learned Montgomery fled the scene of the accident, deliberately evaded the police, hid under a car, and refused to come out when the police found him. This Court finds such evidence to be sufficient to demonstrate a wanton disregard for the safety of human life. Part of the instructions to the jury stated that, in order to convict Montgomery, the jury must find that he was “negligent and that negligence was so gross as to be tantamount to a wanton disregard or an utter indifference to the safety of human life and that such negligence directly caused the death of Thomas Roger.” The jury was properly instructed that Montgomery’s conduct must rise to the level of culpable negligence in order to render a guilty verdict.
¶ 18. Montgomery also argues that the State produced no evidence proving the corpus delicti, or the evidence providing the link between Montgomery’s culpable negligence and the death of Mr. Roger. Although Mr. Roger’s death certificate was never entered into evidence, it was not necessary for the State to make such showing. Our courts have held that “[njeither an autopsy nor medical evidence is required to establish the corpus delicti.” Hopson v. State, 615 So.2d 576, 579 (Miss.1993) (citing Miskelley v. State, 480 So.2d 1104 (Miss.1985)); McCraw v. State, 260 So.2d 457 (Miss.1972); King v. State, 251 Miss. 161, 168 So.2d 637 (1964).
¶ 19. The cause of a victim’s death is usually proven by witnesses who saw the deceased after his death and testified that the deceased was dead. Miskelley, 480 So.2d at 1107. “The criminal agency or cause of death is usually shown by witnesses who saw the homicide, or by circumstances sufficient to establish the crime to the exclusion of every other reasonable hypothesis.” Id. In the case sub judice, two eyewitnesses and a police officer testified as to the extent and severity of Mr. Roger’s injuries immediately after the accident. Mrs. Roger testified that her husband had not been involved in any other accidents in which he could have sustained severe injuries. She also testified that Mr. Roger died four days later in a Memphis hospital. The State has proven its corpus delicti
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J. CONCURS IN RESULT ONLY.